(84 South. 351)

No. 23733.

ATCHAFALAYA LAND CO. v. F. B. WILLIAMS CYPRESS CO. et al. (BOARD OF COM'RS OF ATCHAFALAYA BASIN LEVEE DIST. et al., Interveners.)

(March 1, 1920. Rehearing Denied April 5, 1920.)

*(Syllabus by Editorial Staff.)*

1. PUBLIC LANDS ☞61(11)—LAND DEPARTMENT HELD NOT AUTHORIZED TO ISSUE PATENT TO PERSONS OTHER THAN COMMISSIONERS OF LEVEE DISTRICT.

After the state, by Act of General Assembly 1890, Act No. 97, was obligated to transfer to board of commissioners of levee district all lands within the district acquired by the state from the United States under swamp land acts, the officers of the land department had no authority to issue patent to any one else to land within the district.

2. PUBLIC LANDS ☞61(1)—LANDS SET ASIDE FOR LEVEE DISTRICT UNDER CONTROL OF THE LEGISLATURE UNTIL TITLE PASSES.

Lands acquired by the state under swamp land acts, intended to be conveyed by Act of General Assembly 1890, Act No. 97, creating levee district, remained under control of the Legislature so long as an absolute or indefeasible title had not vested in any individual or private corporation.

3. PUBLIC LANDS ☞61(13)—ANNULMENT OF PATENT TO LAND IN LEVEE DISTRICT HELD BARRED BY LIMITATIONS.

Act No. 62, of 1912, requiring an action to annul a patent issued by the state to be brought within six years of issuance of patent or passage of the statute, *held* to preclude annulment of patents to land acquired by state under Act Cong. March 2, 1849, and Act Cong. Sept. 28, 1850 (U. S. Comp. St. §§ 4958–4960), and included in levee district created by Act No. 97 of 1890, upon ground that land should have been conveyed by state to the levee district under section 11, in action by private corporation to whom levee district had conveyed the land within district to which the board could then lay just claim, notwithstanding Const. art. 193, and Const. U. S. art. 1, § 10, and Amend. 14, § 1.

4. CONSTITUTIONAL LAW ☞123, 307—STATUTE PRECLUDING ANNULMENT OF PATENTS IN ACTION NOT BROUGHT WITHIN SPECIFIED PERIOD HELD NOT UNCONSTITUTIONAL.

Act No. 62 of 1912, precluding annulment of patents for land in levee district created by Act No. 97 of 1890, on ground that land should have been conveyed by state to board of commissioners of the district in action for annulment by corporation to whom district had conveyed land to which it could lay claim not brought within specified period, *held* not to either divest vested rights or impair obligations of a contract in violation of Const. U. S. art. 1, § 10, or to take property without due process of law in violation of Amend. 14, § 1.

5. CONSTITUTIONAL LAW ☞123—WHAT LEGISLATIVE GRANTS ARE PROTECTED BY CONSTITUTIONAL CLAUSE AGAINST IMPAIRMENT OF CONTRACTS.

The only legislative grants that are protected by Const. U. S. art. 1, § 10, prohibiting impairment of the obligations of contracts, are the grants made to or for the benefit of individuals or private corporations or grants on the faith of which and according to the terms of

which an individual or private corporation has acquired title.

6. LIMITATION OF ACTIONS ⬤⟿4(2)—PRESCRIPTION TEST AS TO VALIDITY OF STATUTE STATED.

The test of validity of a statute of limitations under the doctrine that a statute cannot, under the guise of merely changing the remedy for asserting a right or for enforcing an obligation, immediately take away the right or materially impair the means of enforcing the obligation, is whether it allows a reasonable time for the assertion of the right or the enforcement of the obligation; the Legislature being primarily the judge of the reasonableness of the time allowed.

7. CONSTITUTIONAL LAW ⬤⟿107, 308—TAXATION ⬤⟿805(1) — LIMITATIONS APPLICABLE TO SALE IN NAME OF ONE NOT OWNER; NOT DENIAL OF DUE PROCESS; DOES NOT IMPAIR VESTED RIGHT.

The prescription of three years under Const. art. 233, against actions to annul tax sales, is applicable to a sale made for taxes assessed in the name of one who is not the owner of the property, even though the sale was made without notice to the owner and such application of the law does not violate the constitutional prohibition against giving a law the effect of divesting a vested right, and not depriving the owner of his property without due process of law.

Appeal from Nineteenth Judicial District Court, Parish of Iberia; James Simon, Judge.

Action by the Atchafalaya Land Company against the F. B. Williams Cypress Company and others, in which the Board of Commissioners of the Atchafalaya Basin Levee District and another intervened. Judgment for plaintiff and interveners, and defendants appeal. Judgment annulled, with directions.

Hall, Monroe & Lemann and Borah, Himel, Bloch & Borah, all of New Orleans, for appellants.

Burke & Smith and F. E. Delahoussaye, all of New Iberia, for appellee Schwing Lumber & Shingle Co., Ltd.

J. H. Morrison, of New Roads, for appellee Board of Com'rs of Atchafalaya Basin Levee Dist.

O'NIELL, J. This is an action to annul twelve land patents issued to Pharr & Williams, from whom the defendant F. B. Williams Cypress Company derived title, for several tracts of swamp land in the parishes of Iberia and St. Martin, and to have the lands decreed subject to transfer by the state to the board of commissioners of the Atchafalaya Basin levee district, under the statute creating the levee district.

Plaintiff claims that it is the right and duty of the board of commissioners of the levee district to demand, and the duty of the state auditor and the register of the state land office to grant, a deed or instrument of conveyance, pursuant to section 11 of the statute; and that the board is obligated to transfer the lands to plaintiff, as assignee and subrogee of the rights acquired by Edward Wisner and John M. Dresser, under a contract with the board, dated July 9, 1900, and confirmed April 11, 1904.

Plaintiff therefore prayed that the board of commissioners be cited to join in a vindication of plaintiff's rights, and, in the event of the board's failure so to do, that there should be reserved to plaintiff such right or cause of action as might arise, whether in damages or otherwise, for nonperformance of the obligation of the board.

The board of commissioners answered, praying that its pleading be regarded as a petition of intervention, adopting the principal allegations of plaintiff's petition, and joining in the prayer for annulment of the patents under which the defendant F. B. Williams Cypress Company claims title to the lands.

The Schwing Lumber & Shingle Company filed a petition of intervention, claiming title to the cypress timber on the lands by purchase from Wisner and Dresser, and joining in plaintiff's prayer for annulment of the patents under which the defendant F. B. Williams Cypress Company claims title.

The defendant filed an exception of no cause or right of action, and a plea of prescription of six years, under the statute of limitation, Act No. 62 of 1912 (page 73). Defendant also pleaded the prescription of ten years, acquirendi causa, and, in bar of the Schwing Lumber & Shingle Company's demand for the value of the timber already taken from the lands, the prescription of one year. Answering the petitions of the plaintiff and interveners, defendant averred that the patents issued to Pharr & Williams were valid because they were issued within six months after the enactment of the statute creating the levee district, during which six months the board of commissioners had no right, as defendant contends, to demand an instrument of conveyance from the land department.

Judgment was rendered in favor of the plaintiff and interveners, overruling defendants' exception and pleas of prescription, decreeing null the patents under which defendant claims title, and declaring the lands "subject to completion of title by deed from the state to the board of commissioners of the Atchafalaya Basin levee district, in accordance with the terms and provisions of Act 97 of the General Assembly of 1890, for the benefit of the assignee of the rights, title and interest of said board of commissioners," etc. From which judgment, the defendant F. B. Williams Cypress Company prosecutes this appeal.

The lands in controversy were acquired by the state by the swamp land grants, the Acts of Congress of March 2, 1849 (9 Stat. 352, c. 87), and of September 28, 1850 (9 Stat. 519, c. 84, U. S. Comp. St. §§ 4958–4960).

The Atchafalaya Basin levee district, embracing those parts of the parishes of Iberia and St. Martin in which the lands in controversy are situated, was created by the Act No. 97 of 1890 (page 107); the eleventh section of which act declared that all lands then belonging or that might thereafter belong to the state, within the limits of the district, were thereby granted to the board of commissioners of the levee district. It was stipulated in the act that the lands of which the state had or might thereafter become the owner by tax sales should not be transferred or conveyed to the board of commissioners until the time allowed for redemption should have expired; and that all former owners of lands that had been forfeited for nonpayment of taxes might redeem their lands at any time within six months after the passage of the act, by paying the taxes, interest, costs, and penalties, to be placed to the credit of the levee district. It was further provided that, "after the expiration of said six months," it should be the duty of the state auditor and the register of the land office, on behalf and in the name of the state, to convey to the board of commissioners of the levee district, by proper instruments of conveyance, the lands thereby granted or intended to be granted and conveyed to said board, whenever, from time to time, said auditor and said register of the land office, or either of them, should be requested to do so by said board of commissioners or by the president thereof; and that, after the recording of such instrument of conveyance in the recorder's office where the land so conveyed was situated, the title thereto and possession thereof should thenceforth vest absolutely in said board of commissioners, their successors or grantees. The statute provided that the lands should be exempted from taxation "after being conveyed to and while they remained in the possession or under the control of said board"; and that the board should have authority to sell, mortgage or otherwise dispose of the lands in such manner, at such times and for such prices, as the board might deem proper.

The statute was approved July 8, 1890. Within six months thereafter, that is, in

September and November of that year, Pharr & Williams, a partnership composed of John N. Pharr and F. B. Williams, made cash purchases of the lands now in controversy, paying the price fixed by law, at the land office, and obtained the patents in contest, which were signed by the Governor of the state and the register of the land office, and were promptly recorded in the land office and in each parish in which the lands are situated, respectively.

John N. Pharr sold his interest in the lands to F. B. Williams by deed dated March 28, 1892, and recorded in the recorder's office of St. Martin parish on April 3, 1892, and in the recorder's office of Iberia parish on April 6, 1892. F. B. Williams sold the lands to the F. B. Williams Cypress Company by deed dated May 23, 1903, and recorded in the office of the recorder of the parish of Iberia and of the parish of St. Martin, on May 26, 1903.

It is admitted that Pharr & Williams, and, in turn, F. B. Williams and the F. B. Williams Cypress Company, paid the taxes assessed against the lands in contest every year since 1890; that they went into possession of the lands immediately after the patents were issued, exercised acts of ownership, had the timber cruised, estimated and marked, had canals dug and timber cut and removed from the lands, and did other acts of possession, openly, notoriously, and continuously, from the time the patents were issued to the date of filing of the defendant's answer to this suit.

No instrument of conveyance of the lands in contest was ever issued to the board of commissioners of the levee district; nor was any request ever made for such instrument of conveyance, as provided in section 11 of Act 97 of 1890.

On the 9th of July, 1900, the board of commissioners transferred to Edward Wisner and J. M. Dresser, by quitclaim deed, all of the lands that had been granted to the board by Act 97 of 1890 that had not yet been disposed of by the board, being all of the lands then owned by the board, including all lands to which the board could then "lay just claim," and all lands that had then been sold to the state for unpaid taxes but for which deeds had not yet been made to the state or to the board of commissioners, but not including any lands that might thereafter be adjudicated to the state for delinquent taxes. The purchase price was $120,000, of which Wisner and Dresser paid $25,000 cash; and the remaining $95,000 was payable in two equal semiannual installments.

It was declared in the deed that some of the lands acquired by the board had already been sold but that deeds had not been made therefor; that the board had also agreed to make quitclaim deeds in favor of the former owners of other lands; and that the lands that were thus already bargained for or verbally quitclaimed by the board were therefore not included in the transfer to Wisner and Dresser.

The instrument did not describe any land specifically, but contained the following clauses, which are the cause of plaintiff's having had the board of commissioners cited as a defendant in this suit, viz.:

"It is further agreed and understood that the said party of the first part (board of commissioners) is to lend itself, with all its rights, powers and privileges and prerogatives, to perfect its title, or the title acquired under this agreement, to all lands which it could have and the parties of the second part (Wisner and Dresser) can now justly lay claim to, and to do so whenever so requested by the parties of the second part; all proceedings, however, to be at the expense of the parties of the second part.

"It is further agreed and understood that the present agreement is not to be a complete or perfected sale, but to be in the nature of an agreement to sell, until the full sum of one hundred and twenty thousand dollars due under this agreement shall have been paid, but that, in the meantime, the said party of the first part

is to make complete and final title to such specific pieces of land embraced by this agreement and to such persons as said parties of the second part may wish, provided that the price of such sales be paid direct to said party of the first part and be not less than one dollar per acre for tax lands and other high lands, and twenty-five cents per acre for marsh lands."

Thereafter, at different times, the board of commissioners, pursuant to the foregoing agreement, made quitclaim deeds, conveying a number of specified tracts of land to parties designated by Wisner and Dresser; some lands being conveyed to John M. Dresser, some to Edward Wisner, some to George G. Matzger, some to the Terrebonne Land Company (organized by Wisner and Dresser), and some to the South Louisiana Land Company (organized by Wisner and Dresser). And on the 11th of April, 1904, a written agreement was entered into by the board of commissioners and Wisner and Dresser, and placed of record in the parishes where the lands were situated; in which instrument the board acknowledged 'receipt of the balance of the purchase price from Wisner and Dresser, and acknowledged that the board had made the quitclaims to the parties hereinabove named, pursuant to the obligation of the board and with the consent and approval of Wisner and Dresser. The purpose of the instrument was declared to be to put on record evidence that the board of commissioners had authority to make the deeds to the parties named, instead of to Wisner and Dresser, in pursuance of the contract of July 9, 1900.

On the 23d of November, 1907, Edward Wisner and J. M. Dresser and the South Louisiana Land Company and the North Louisiana Land Company (organized by Wisner and Dresser), sold by two deeds, to the Schwing Lumber & Shingle Company, all of the cypress timber on several tracts of land, specifically described, in the parishes of Iberia and St. Martin. The lands now in contest were not described in either deed, but each deed contained the following clause, which is the basis of the Schwing Lumber & Shingle Company's claim, as intervener in this suit, viz.:

"It is understood that this contract shall cover all the land above described and any other land owned by the said vendor in said parish not hereinabove specifically described."

By two deeds dated, respectively, the 20th and 30th of December, 1908, the South Louisiana Land Company, represented by its president, Edward Wisner, sold to the Atchafalaya Land Company, represented by its vice president, J. M. Dresser, several tracts of land, specifically described, in the parishes of Iberia and St. Martin. The lands now in contest were not described in either deed, but each deed contained the following stipulation, which is the basis of plaintiff's claim in this suit (the name "Iberia" appearing in the deed to the lands in that parish, and the name "St. Martin" in the deed to the lands in that parish), viz.:

"The South Louisiana Land Company, Limited, also sells all of its rights to the lands in Iberia parish, whether they are included in this deed or not by definite description; and the said South Louisiana Land Company, Limited, hereby agrees, should anything be . omitted, to convey the same by definite description whenever called upon to do so; and the said South Louisiana Land Company, Limited, referring to the records of Iberia parish, hereby does convey any and all landed interest that it may have in said parish, whether definitely described or not, reference being made to the record books of said parish for said description."

All of the deeds above mentioned were promptly and properly recorded in Iberia or St. Martin parish, where the lands referred to were situated.

We do not find in the record a transfer by Wisner and Dresser to the South Louisiana Land Company of the rights acquired by Wisner and Dresser from the board of commissioners of the levee district, as to the

lands in contest. But that is a matter of no importance, since both Wisner and Dresser, in their representative capacities, were parties to the transfer made by the South Louisiana Land Company to the plaintiff in this suit. We shall therefore regard the plaintiff as having, with regard to the land in contest, whatever rights Wisner and Dresser would now have if they had not disposed of the rights they acquired from the board of commissioners of the levee district.

The statute of limitation, Act 62 of 1912, invoked by the defendant F. B. Williams Cypress Company, was approved July 5, 1912, viz.:

"Be it enacted by the General Assembly of the state of Louisiana, etc., That all suits or proceedings of the state of Louisiana, private corporations, partnerships or persons to vacate and annul any patent issued by the state of Louisiana, duly signed by the Governor of the state and the register of the state land office, and of record in the state land office, or any transfer of property by any subdivision of the state, shall be brought only within six years of the issuance of patent, provided, that suits to annul patents previously issued shall be brought within six years from the passage of this act."

This suit was filed on the 26th of April, 1919; that is, 6 years and nearly 10 months after the passage of the statute of limitation, nearly 19 years after Wisner and Dresser had acquired the claim of the board of commissioners of the levee district, and more than 28 years after the Pharr & Williams patents were recorded in the land office and in the parishes of Iberia and St. Martin.

Counsel for plaintiff and interveners contend that the statute of limitation cannot stand in the way of this suit without giving the law the retroactive effect of divesting a vested right and of impairing the obligation of a contract, in violation of the first paragraph of section 10 of article 1 of the Constitution of the United States, and without depriving the plaintiff and intervener of their

146 LA.—34

property without due process of law, in violation of section 1 of the fourteenth amendment.

It is not contended that the six years allowed, from and after the passage of the act, was not sufficient time for the board of commissioners of the levee district, or for any person, firm or corporation claiming rights acquired from the board, to institute a suit to annul any patent that had been issued for lands of which the board of commissioners might have demanded an instrument of conveyance from the state auditor and the register of the land office. On the contrary, as far as the record discloses, no attempt was made by the board of commissioners of the levee district, or by Wisner and Dresser, or either of them, or by the South Louisiana Land Company, or the Atchafalaya Land Company, or by the Schwing Lumber & Shingle Company, to obtain an instrument of conveyance of the lands in contest, or to annul the patents that had been issued to Pharr & Williams, until the six years allowed by the statute of limitation had expired. There is an admission in the record that the Atchafalaya Land Company and the Schwing Lumber & Shingle Company employed abstractors of titles "in the latter half of the year 1916" to examine the titles of all the lands within the Atchafalaya Basin levee district, "with a view of ascertaining what lands they might lay claim to, under the contract alleged in the petition, and that, as a result of the investigation by the abstractors, the present suit was brought." As this suit was brought on the 26th of April, 1919, it is apparent that the work of the title abstractors did not take many months. An examination of the records of the land office, at any time within the preceding 28 years, would have disclosed that patents had been issued to Pharr & Williams for lands within the levee district, for which the board of commissioners might have demanded an instru-

ment of conveyance, under the provisions of section 11 of Act 97 of 1890.

In passing upon this plea of prescription or statute of repose, we disregard the question whether the provision in section 11 of the statute creating the levee district, that the lands should not be conveyed to the board of commissioners until "after the expiration of said six months" allowed for the redemption of lands that had been sold to the state for taxes, should apply only to lands that had been sold to the state for taxes, or also to lands otherwise acquired by the state. In fact, we must assume, in deciding the question of prescription, that the lands in contest, which were not held under tax title by the state, were subject to conveyance to the board of commissioners of the levee district within the six months after the passage of the act creating the levee district; because, if we should hold that the lands were not then subject to conveyance to the board of commissioners, the patents that were issued to Pharr & Williams within the six months would have been valid ab initio, and there would be no reason for considering the plea of prescription or statute of repose. Although the opinion was expressed in the case of the State v. Cross Lake Shooting & Fishing Club, 123 La. 208, 48 South. 891, that the six months' period in which the lands were withheld from conveyance to the board of commissioners of the levee district applied, not only to lands acquired by the state by tax title, but to all other state lands in the district, we prefer to rest our decision of this case upon the plea of prescription or statute of repose; because the statute seems so plainly applicable that we see no reason for considering any other question in the case.

The "vested right" which plaintiff's counsel contend would be divested if the statute of limitation should prevail in this case, is the right which the board of commissioners had, under section 11 of Act 97 of 1890,

to demand and obtain from the state auditor and register of the land office an instrument of conveyance of the land now in controversy. In other words, the "obligation of the contract," which plaintiff's counsel argue would be violated if the statute of limitation should prevail in this case, is the obligation incurred by the state, by the act of the Legislature creating the levee district, to transfer to the board of commissioners the lands now in controversy, viz.:

"After the expiration of said six months it shall be the duty of the auditor and the register of the state land office, on behalf and in the name of the state, to convey to the said board of levee commissioners, by proper instruments of conveyance, the lands hereby granted or intended to be granted and conveyed to said board, whenever from time to time said auditor and said register of the state land office, or either of them, shall be requested to do so by said board of levee commissioners, or by the president thereof, and thereafter said president of said board shall cause said conveyances to be properly recorded in the recorder's office of the respective parishes wherein said lands are or may be located, and when said conveyances are so recorded the title to said land, with the possession thereof, shall thenceforth vest absolutely in said board of levee commissioners, its successors or grantees; said lands shall be exempted from taxation after being conveyed to and while they remain in the possession or under the control of said board."

[1, 2] The Legislature did not, in the act creating the levee district, put a time limit upon the right of the board of commissioners to demand instruments of conveyance of the lands conveyed or intended to be conveyed by the statute. And it is well settled that, after the state was, by the act of the Legislature, obligated to transfer to the board of commissioners all lands within the levee district, the officers of the land department did not have authority to issue a patent to any one else for land within the district. See State ex rel. Board of Commissioners of Caddo Levee District v. Grace, Register, 145 La. 962, 83 South. 206, and the list of deci-

sions there cited. But it is also well settled that the lands intended to be conveyed by the statute creating the levee district remained under the control of the Legislature so long as an absolute or indefeasible title had not vested in any individual or private corporation. In State v. Cross Lake Shooting & Fishing Club, supra, and again in State ex rel. Atchafalaya Basin Levee Board v. Capdevielle, Auditor, 142 La. 111, 76 South. 327, it was held that the Legislature retained the power to revoke the donation made by the statute creating the levee district, as to any land for which an instrument of conveyance had not been issued to the board of commissioners.

Far from revoking the donation or grant of any land for which the board of commissioners might have demanded an instrument of conveyance, Act 62 of 1912 allowed the board six years in which to demand instruments of conveyance, even of lands for which patents had been issued to other parties.

The reason why the state did not, by the act of the Legislature creating the levee district, lose control over the lands, is that the board of commissioners of the district was thereby made a state agency, subject to the authority and control of the state Legislature.

[3] Counsel for plaintiff and interveners argue that the constitutional provision that prescription shall not run against the state in any civil matter is applicable to a state agency, or political subdivision, such as the levee district; and that the plea of prescription or statute of repose, therefore, cannot prevail against the board of commissioners of the levee district, as intervener in this suit. Our answer is, first, that the provision in article 193 of the Constitution, that prescription shall not run against the state in any civil matter, is qualified thus: "Unless otherwise provided * * * expressly by law." In other words, the framers of the Constitution left the authority with the Legislature to say whether any particular statute of prescription should operate against the state. Our second answer to the proposition is that the state has no property interest in this controversy, nor has the board of commissioners of the levee district, for that matter. If the land does not belong to the defendant, by virtue of the patents that were issued to Pharr & Williams, it belongs to the plaintiff, by virtue of the grant by the state to the board of commissioners of the levee district, the assignment by the board to Wisner and Dresser, etc. In State ex rel. Board of Commissioners v. Grace, supra, the defendant, holder of a patent from the state, contended that the suit to annul the patent should have been brought by the state, not by the board of commissioners of the levee district, nor the board's transferee; but the ruling was that the state had no interest whatever in the suit to annul the patent, because the result of annulling the patent would be to convey the land to the transferee from the board of commissioners of the levee district.

Although the plaintiff in this suit has, with regard to the land in contest, whatever right the board of commissioners would have if the board had not made the contract with Wisner and Dresser, the plaintiff has no greater right than the board of commissioners would have if it had not disposed of its claim. It was said in State v. Cross Lake S. & F. Club, supra, and repeated in State ex rel. Board of Commissioners v. Grace, supra, that the board of commissioners of the levee district could not convey a perfect title, or title indefeasible at the instance of the state, for any land in the district, before the board had obtained and recorded an instrument of conveyance of the land, in the manner required by the statute creating the levee district.

[4, 5] We know of no principle on which to sustain plaintiff's contention, that to apply

the plea of prescription or statute of repose to this suit would violate the clause of the federal Constitution forbidding the state to enact a law impairing the obligation of a contract. There are two separate and distinct reasons why the inhibition of the federal Constitution is not pertinent to this case. The first reason is that a statute creating a state agency and investing it with authority to dispose of public lands is not a "contract" within the meaning of the clause forbidding the enactment of laws impairing the obligations of contracts. The only legislative grants that are protected by the clause forbidding the enactment of laws impairing the obligations of contracts are grants made to or for the benefit of individuals or private corporations, or grants on the faith of which and according to the terms of which an individual or private corporation has acquired title. See Black's Constitutional Law (2d Ed.) p. 610, § 274; and Cooley's Constitutional Limitations (7th Ed.) c. 9, p. 387 et seq. The stipulation in the statute creating the levee district, that title to the lands should not vest absolutely in the board of commissioners until the board should obtain an instrument of conveyance and have it recorded in the parish where the land conveyed was situated, made it impossible for any individual or private corporation to obtain from the board an indefeasible title to any land before the issuance and registry of such instrument of conveyance to the board of commissioners. In fact, the levee board's contract with Wisner and Dresser did not purport to convey title to any land for which the board had not obtained an instrument of conveyance from the state auditor or the register of the land office. The obligation incurred by the levee board was merely to transfer to Wisner and Dresser all of the lands for which the board could obtain instruments of conveyance by virtue of the statute creating the levee district. And, until such instruments of conveyance were obtain-

ed by the board, the lands remained under legislative control by the state, as well after as before the board of commissioners contracted with Wisner and Dresser. The Legislature, therefore, had the power, at any time, to limit the time within which the board of commissioners of the levee district could lay claim to lands that had been disposed of by the state directly in favor of individuals or private corporations.

The other reason, why the constitutional inhibition, against giving a statute the retroactive effect of impairing the obligation of a contract, is not pertinent to this case, is that the statute of repose, Act 62 of 1912, did not divest any one of his vested right, but, on the contrary, allowed a reasonable time for every one to assert his right.

[6] Counsel for the plaintiff and interveners cite Cooley's Constitutional Limitations, Black's Constitutional Law, and Watson on the Constitution, in support of the well-recognized doctrine that a statute cannot, under the guise of merely changing the remedy for asserting a right or for enforcing an obligation, immediately take away the right or materially impair the means of enforcing the obligation. The test of validity of a statute of limitation, under that doctrine, is whether it allows a reasonable time for the assertion of the right or the enforcement of the obligation; and the Legislature is primarily the judge of the reasonableness of the time allowed. Watson on the Constitution, vol. 1, p. 799, under the title, What is an Impairment of the Obligation of a Contract, says:

"So, a contract may be impaired by a change in the statute of limitations. The rule is that statutes affecting existing rights are not contrary to the Constitution when they give a reasonable time to begin an action before it is barred by the statute. The question in such a case always is whether the time is reasonable, and that is left to the judgment of the Legislature; and the courts will not determine it unless the error is a palpable one. It was

held that nine months and seventeen days in which to sue on a cause of action which had already run nearly four years was not unreasonable."

If the time that had already run has anything to do with the question, why should we say that six years in which to sue on a cause of action that had already run 22 years was not a reasonable time?

We quote from Black's Constitutional Law (2d Ed.) p. 623, this pertinent paragraph:

"The Legislature may enact new or different statutes of limitation, prescribing the period within which actions on contracts must be brought, and may make them applicable to existing contracts, providing the remedy of the creditor is not thereby taken away or unreasonably restricted. That is to say, a statute of limitations cutting off all remedy on a particular contract, by prescribing a period which, as to that contract, had already expired, would be unconstitutional. But, if it leaves a reasonable time to the creditor to begin his proceedings, he cannot complain, although the time is less than it would have been if the former statute had remained in force."

[7] It has been settled by repeated decisions of this court (beginning with the case of Terry v. Heisen, 115 La. 1070, 40 South. 461) that the prescription of three years, under article 233 of the Constitution, against actions to annul tax sales, is applicable to a sale made for taxes assessed 'in the name of one who was not the owner of the property, and even though the sale was made without notice to the owner; and that such application of the law does not violate the constitutional prohibition against giving a law the effect of divesting a vested right, and does not deprive the owner of his property without due process of law.

A statute of March 10, 1834 (page 123), establishing the prescription of five years against suits to annul sales made under execution, although the law did not purport to apply to sales that had been made before the law was enacted, was held applicable to such sales when five years had expired from and after the date of promulgation of the law. See Bourg v. Monginot, 1 Rob. 331, and Valderes v. Bird, 10 Rob. 396. A statute of April 30, 1853 (No. 274), declaring, "hereafter all judgments for money, whether rendered within or without the state, shall be prescribed by the lapse of ten years from the rendition of such judgment," was held applicable to judgments rendered before the law was enacted, provided ten years had elapsed from and after the date of promulgation of the law. See Succession of Rice, 15 La. Ann. 649, and Succession of Beckham, 16 La. Ann. 352.

In support of the doctrine that a statute of limitation that allows a reasonable time for the assertion of a right or the enforcement of an obligation is not violative of the constitutional prohibition against divesting a vested right or impairing the obligation of a contract, see Phalen v. Commonwealth of Virginia, 8 How. 163, 12 L. Ed. 1030; Town of Koshkonong v. Burton, 104 U. S. 668, 26 L. Ed. 887; Terry v. Anderson, 95 U. S. 633, 24 L. Ed. 365; Turner v. State of New York, 168 U. S. 91, 18 Sup. Ct. 38, 42 L. Ed. 392; Encl. of U. S. S. C. Reports, vol. 4, p. 446 (c), volume 5, p. 589, and volume 6, p. 880 (b); and the cases cited in 12 Corpus Juris, p. 976, under section 574. See Cooley's Constitutional Limitations (7th Ed.) p. 520 et seq. See, also, McNamara v. Marx, 136 La. 159, 66 South. 764, where it was said, of a statute of repose (Act 53 of 1912) allowing only six months in which to bring a suit to annul a private sale of property owned partly by a minor child, for the cause that only the minor's interest was sold, to effect a partition:

"We conclude that said act is operative against minors, and does not deprive them of their property without due process of law. Such legislation is not violative of the Constitution of the United States, if a reasonable time be given for the commencement of an action. * * * As to the reasonableness of time,

the Legislature is the judge, and the courts will not interfere, unless the time be so short as to amount to a denial of justice. Jackson v. Lamphire, 3 Pet. 280, 7 L. Ed. 679."

Counsel for the plaintiff and interveners argue that the patents in contest were absolutely null, not susceptible of confirmation by a statute of repose, because the officers who signed and issued them were without authority to do so, after the enactment of the statute creating the levee district in which the lands were embraced. The answer is that the patents were in the form described by the statute of limitation; that is, they were "duly signed by the Governor of the state and the register of the state land office, and of record in the state land office." Conceding that the Governor of the state and the register of the land office were without authority to issue the patents, the Legislature had authority to ratify and confirm their acts, as was done by the statute of repose. As was said of a similar statute of limitation enacted by the Congress of the United States in United States v. Chandler-Dunbar Water Power Co., 209 U. S. 447, 28 Sup. Ct. 579, 52 L. Ed. 881:

"The statute presupposes an instrument that might be declared void. When it refers to 'any patent heretofore issued,' it describes the purport and source of the document, not its legal effect. If the act were confined to valid patents it would be almost or quite without use."

Our conclusion is that the district court should have sustained the defendant's plea of prescription of six years, under the statute of limitation, Act 62 of 1912.

The judgment appealed from is annulled, and it is now ordered, adjudged and decreed that appellant's plea of prescription of six years, under Act No. 62 of 1912, be and the same is hereby sustained, and that the demands of the plaintiff and interveners herein be and they are hereby denied and rejected. The Schwing Lumber & Shingle Company is to pay the costs incurred by its intervention; and the plaintiff is to pay all other costs of this suit.

MONROE, C. J., and PROVOSTY, J., take no part.