(102 So. 871)

No. 25042.

ATCHAFALAYA LAND CO., Limited, v. DIBERT, STARK & BROWN CYPRESS CO., Limited, et al.

(Jan. 5, 1925.  Rehearing Denied Feb. 2, 1925.)

*(Syllabus by Editorial Staff.)*

1. Public lands ⚖61(13) — Limitation inapplicable to suit to annul patent granted after state lost title.

Act No. 62 of 1912, limiting time for suits to annul patents, applies only where state still held title and patent issued irregularly or to prejudice of one having equitable interest in land; defect in title of one, to whom patented after title passed out of state, being curable only by good faith and possession under patent for 10 years.

2. Public lands ⚖61(13)—Levee board's action to annul patent prescribed under six-year statute, unless prior grant to it was in præsenti.

Unless Act No. 97 of 1890 was absolute grant of lands in præsenti to levee board therein named, latter's action, brought more than six years after passage of Act No. 62 of 1912, to annul grant to another, is prescribed under latter act.

3. Limitation of actions ⚖4(2) — Prescription; act requiring suit to annul patent within six years after passage held constitutional.

Act No. 62 of 1912, requiring that suit to annul land patent theretofore issued be brought within six years from passage of act, *held* constitutional, six years being ample time to question Governor's official acts, to alleged prejudice of equitable claimant against state.

4. Constitutional law ⚖42—Levee board cannot question constitutionality of act prescribing time for bringing suit to annul patent.

Levee board, being mere state agency, cannot question constitutionality of Act No. 62 of 1912, requiring that suit to annul patent to land, in which it had equitable interest under prior grant, be brought within six years, as state might recall grant absolutely and at once.

5. Public lands ⚖61(13)—Statutory requirement as to time for bringing suit to annul patent not affected by rights of levee boards and assigns under prior grants.

That levee boards and their assigns acquired such interest in lands granted that they might demand conveyance thereof, and that assigns might enjoin sale of land under general land laws, or have patent canceled does not affect application of Act No. 62 of 1912, providing that action to annul patent be brought within six years.

6. Public lands ⚖61(13) — Grant to levee boards held not in præsenti, but mere grant of right to acquire lands by conveyance from proper officers.

Grant of public lands to levee board under Act No. 97 of 1890 *held* not in præsenti, but

mere grant of right to acquire them by conveyance from proper state officers, which is legislative interpretation thereof, by Act No. 171 of 1902, § 4, so that board's suit to annul subsequent patent to another is prescribed after six years from passage of Act No. 62 of 1912.

Appeal from Twenty-Seventh Judicial District Court, Parish of Assumption; Sam A. Le Blanc, Judge.

Suit by the Atchafalaya Land Company, Limited, in liquidation, against the Dibert, Stark & Brown Cypress Company, Limited, and others, in which the Board of Commissioners of the Atchafalaya Basin Levee District and another intervened as parties plaintiff. From a judgment sustaining a plea of prescription, plaintiff and the named intervener appeal. Affirmed.

Burke & Smith and F. E. Delahoussaye, all of New Iberia, and J. H. Morrison, Dist. Atty., of New Roads, for appellants.

Guion & Upton and Guion & Lambremont, all of New Orleans, for appellees.

ST. PAUL, J. The trial judge has clearly and succinctly stated the issues herein involved (substantially) as follows:

This suit is brought by the liquidators of the plaintiff company for the purpose of annulling and canceling certain state land patents, through which is derived the title of the defendants to certain large tracts of land in the parish of Assumption; and to have it declared that said lands were included in the grant from the state of Louisiana to the Atchafalaya Basin levee board (through whom plaintiff claims) under the provisions of Act 97 of 1896, creating said levee board.

The defendants set out complete chains of title running back to the state, from whom title was obtained by patents issued for the larger portion thereof to S. Abraham on November 10, 1890, and for a smaller portion to W. R. Croxton on May 23, 1854. The Croxton patents, however, are not involved in this contest.

The Schwing Lumber & Shingle Company, claiming to be owners of the timber on said lands, have intervened herein, joining plaintiffs. And the board of commissioners of the Atchafalaya Basin levee board, who in disposing of the lands to plaintiffs authors bound said levee board to "lend itself and all its rights, powers, privileges and prerogatives to perfect the title to the lands," have also intervened herein and joined plaintiff.

The foregoing recital of the pleadings disclose the fact that the case is similar in all respects to that of Atchafalaya Land Co. v. F. B. Williams Cypress Co., reported 146 La. 1047, 84 So. 351.

The same plea of prescription of six years, based upon Act 62 of 1912, upon which the decision of the Williams Case rested, is here presented also.

Counsel for plaintiff refers to the two cases as being parallel. He contends, however, that the decision in the Williams Case is so much at variance and so irreconcilable with the prior jurisprudence of the Supreme Court that this court should disregard it and decide this case according to the former jurisprudence.

The trial judge, however, followed the Williams Case, and sustained the plea of prescription filed.

## I.

In this court plaintiff says in its brief:

"If the decision in the Williams Case is now the jurisprudence, plaintiff has no case. If the court will return to the fixed jurisprudence, including the interpretation of the very contract at issue, then we tender the issue (upon the plea of prescription of six years)."

## II.

It will thus be seen that this court is asked to review its decision in the Williams Case; and, in view of the magnitude of interests involved we have undertaken to do so. For this purpose it becomes necessary to make a brief recital of the facts in the Williams Case, which mutatis mutandis are the same as in this, viz.:

"The lands in controversy were acquired by the state by the swamp land grants, the Acts of Congress of March 2, 1849 (9 Stat. 352, c. 87), and of September 28, 1850 (9 Stat. 519, c. 84, U. S. Comp. St. §§ 4958–4960).

"The Atchafalaya Basin levee district, embracing those parts of the parishes of Iberia and St. Martin in which the lands in controversy are situated, was created by Act No. 97 of 1890 (page 107); the eleventh section of which act declared that all lands then be-

longing or that might thereafter belong to the state, within the limits of the district, were thereby granted to the board of commissioners of the levee district. It was stipulated in the act that the lands of which the state had or might thereafter become the owner by tax sales should not be transferred or conveyed to the board of commissioners until the time allowed for redemption should have expired; and that all former owners of lands that had been forfeited for nonpayment of taxes might redeem their lands at any time within six months after the passage of the act, by paying the taxes, interest, costs, and penalties, to be placed to the credit of the levee district. It was further provided that 'after the expiration of said six months,' it should be the duty of the state auditor and the register of the land office, on behalf and in the name of the state, to convey to the board of commissioners of the levee district, by proper instruments of conveyance, the lands thereby granted or intended to be granted and conveyed to said board, whenever, from time to time, said auditor and said register of the land office, or either of them, should be requested to do so by said board of commissioners or by the president thereof; and that, after the recording of such instrument of conveyance in the recorder's office where the land so conveyed was situated, the title thereto and possession thereof should thenceforth vest absolutely in said board of commissioners, their successors or grantees. The statute provided that the lands should be exempted from taxation 'after being conveyed to and while they remained in the possession or under the control of said board'; and that the board should have authority to sell, mortgage or otherwise dispose of the lands in such manner, at such times and for such prices, as the board might deem proper.

"The statute was approved July 8, 1890. Within six months thereafter, that is, in September and November of that year, Pharr & Williams, a partnership composed of John N. Pharr and F. B. Williams, made cash purchases of lands now in controversy, paying the price fixed by law, at the land office, and obtained the patents in contest, which were signed by the Governor of the state and the register of the land office, and were promptly recorded in the land office and in each parish in which the lands are situated, respectively. * * *

"No instrument of conveyance of the lands in contest was ever issued to the board of commissioners of the levee district; nor was any request ever made for such instrument of conveyance, as provided in section 11 of Act 97 of 1890.

"On the 9th of July, 1900, the board of commissioners transferred to Edward Wisner and J. M. Dresser, by quitclaim deed, all of the lands that had been granted to the board by Act 97 of 1890 that had not yet been disposed of by the board, being all of the lands then owned by the board including all lands to which the board could then 'lay just claim,' and all lands that had then been sold to the state for unpaid taxes, but for which deeds had not yet been made to the state or to the board of commissioners, but not including any lands that might thereafter be adjudicated to the state for delinquent taxes."

### III.

On July 5, 1912, more than six years before the filing of this suit, Act 62 of 1912, p. 73, was passed by the Legislature, reading as follows:

"Be it enacted by the General Assembly of the state of Louisiana, etc., that all suits or proceedings of the state of Louisiana, private corporations, partnerships or persons to vacate and annul any patent issued by the state of Louisiana, duly signed by the Governor of the state and the register of the state land office, and of record in the state land office, or any transfer of property by any subdivision of the state, shall be brought only within six years of the issuance of patent, provided, that suits to annul patents previously issued shall be brought within six years from the passage of this act."

### IV.

[1] It may well be admitted that if on November 10, 1890, when the lands herein involved were patented to Abraham, the title to said lands had already passed out of the state, then the above statute has no application; for, even conceding the entire validity and regularity of the patent, nevertheless Abraham could acquire thereby no title to the lands patented. Such a defect in *title* (not in the *patent*) could be cured only by good faith and possession under the patent for ten years. Hence the statute can apply only where the state still held title to the lands, and the patent issued irregularly, or to the prejudice of some one having an equitable interest in the land.

[2] Clearly the Atchafalaya levee board,

had, on November 10, 1890, *at least* an equitable interest in the lands. But, if that 'is *all* the interest it had, then it is precisely to cut off any belated action in asserting the same that the statute was passed.

We have therefore no hesitation in holding that, unless Act No. 97 of 1890, p. 107, was an absolute grant of the lands in præsenti to the levee board, the action of that board to annul a grant thereof to another is prescribed under the aforesaid Act 62 of 1912.

[3, 4] We may add that in that aspect we see nothing unconstitutional about the statute; six years is, of course, more than ample time in which to question the official acts of the Governor of a state to the alleged prejudice of an equitable claimant against the state. And we mention this only because the levee board has parted with its title and hence private rights have intervened. Were we dealing only with the rights of the levee board itself, it would suffice to say that as a mere state agency it would have no right to raise the question, since the state might flatly have recalled the grant absolutely and at once.

### V.

[5] It has been held that the various levee boards, all organized under similar statutes, and their assigns acquired such an interest in the lands mentioned in the statutes that: (1) The levee boards may at any time demand a *conveyance* thereof, from the proper authorities (State ex rel. Levee Board v. Capdervielle, 142 La. 111, 76 So. 327); (2) the assignee of the levee board may enjoin the register of the land office from selling such lands under the general land laws of the state (Atchafalaya Land Co. v. Grace, 143 La. 637, 79 So. 173); and (3) such assignee may even cause to have canceled a patent actually issued to a third person for such lands. State ex rel. Levee Board v. Grace, 145 La. 962, 83 So. 206.

All of which is quite true, but in no way conflicts with what we have said in paragraph IV; for it does not affect in any way the question whether under Act 62 of 1912 such actions must be brought within *six years* after a patent for the land actually issues. On the contrary, the very fact that the register of the land office thought he had a right to sell the lands and issue patents therefor to purchasers acting in good faith, is a very strong reason why some statute of repose should be passed on that subject; and the fact that the levee boards and their assigns should deem it necessary to bring such actions, and that this court should seriously pass upon them, is very eloquent of the fact that *some rights* adverse to the levee boards and their assigns might result from the issuance of such patents. The Act of 1912 seems to have been passed for the express purpose of fixing the time within which such rights (whatever they might be) should be contested.

### VI.

[6] The question therefore ultimately resolves itself into this, was the grant to the levee boards under Act 97 of 1890 a grant of the lands in præsenti or a mere grant of the right to acquire the lands by a conveyance from the proper state officers.

The question is not free from difficulty. The act declares that the lands *"shall be, and the same hereby are given, granted, bargained, donated, conveyed and delivered"* to the levee board. Had the act stopped here the difficulty had been at an end, but the act provides that the former owners of lands forfeited, or sold to the state, for taxes shall have six months from the passage of the act in which to redeem, and then proceeds to declare that at the end of said six months, and, when requested by the levee board, the auditor and register of the land office shall convey to the levee board by proper instru-

ments of conveyance the lands "granted or intended to be granted," which conveyances shall be duly recorded in the conveyance records of each parish, *"and when said conveyances are so recorded the title to said land, with the possession thereof, shall, from thenceforth vest absolutely in said board of levee commissioners, its successors or grantees."*

It is therefore apparent that there is a conflict between the clause first above quoted and the clause last quoted. And as pointed out by Mr. Justice Monroe in State v. Cross Lake Club, 123 La. 208, 48 So. 891, the two clauses cannot be reconciled by supposing a grant in præsenti of all lands other than tax lands, and the necessity for a *conveyance* only as to tax lands, for neither the language of the section nor the structure and punctuation thereof will permit that construction.

Hence this court early found itself under the necessity of declaring the one or the other of these two clauses as expressing the legislative intent.

In McDade v. Bossier Levee Board, 109 La. 625, 33 So. 628, the court, in construing a similar statute (Act 89 of 1892, § 7), held that the grant was one in præsenti; but *on rehearing* the court held that title to the lands did not vest in the levee board until a conveyance thereof had been executed by the proper state officers and duly registered in the parish records.

In St. Paul v. La. Cypress Co., 116 La. 585, 40 So. 906, this court said:

"The defendant avers that the land in question inured to the levee board under Act No. 97, p. 107. of 1890. * * *

"The defendant's contention is that the grant by the state of these lands, sold at tax sale, was a grant in præsenti, and that the provision for the making out of a list by the auditor and the register of the land office, was intended as descriptive, and that instead of being a condition precedent, it was a condition subsequent, and, as such, could only be taken advantage of by the grantor in the event of failure to make out the list.

"This argument of learned counsel for defendant would have force were it not that this court has taken a contrary view in a decision recently handed down. As this decision relates to real property, it can be set aside only upon most convincing grounds. * * *

"Under the interpretation in decision cited, infra, the clause [as to deed of conveyance and registry thereof] is not directory, but mandatory. Williams v. White Castle Lumber Co., 114 La. 450, 38 So. 414."

In Hartigan v. Weaver, 126 La. 492, 52 So. 674, this court said:

"The mandate of the lawmaker and the authority vested in the [levee] board are that the president shall have the conveyance properly recorded in the recorder's office of the respective parishes in which the land is located, and when said conveyances are so recorded the title to said land passes to the levee board."

In State v. Cross Lake Shooting & Fishing Club, 123 La. 208, 48 So. 891, this court held, in interpreting a similar statute organizing the Caddo levee district, that—

"Under Act No. 74, p. 95, of 1892, and Act No. 160, p. 242, of 1900, the grant of lands made by the state to the board of commissioners of the Caddo levee district is not a grant in præsenti, but is intended to vest in the grantee a disposable title only when proper instruments of conveyance, executed by the state auditor and register of the state land office, are recorded in the parishes where the lands lie. * * * *"

And (for whatever it may be worth) this is also the Legislative interpretation of said grants. See section 4 of Act 171 of 1902, p. 325.

On the other hand we have not found, nor has there been pointed out to us, any decision to the contrary.

## VII.

Our conclusion is that Atchafalaya Land Co. v. Williams Cypress Co., 146 La. 1047, 84 So. 351, was correctly decided, and that the plea of prescription of six years herein

filed was properly sustained by the trial judge.

### Decree.

The judgment appealed from is therefore affirmed.