On Rehearing
McCALEB, Justice.
We granted a rehearing in this case for the purpose of considering the contention of the State that our holding is in direct *729 conflict with the decision in Miami Corporation v. State, 186 La. 784, 173 So. 315.
The facts and issues presented in the case have been fully and comprehensively outlined, considered and adjudicated in our original opinion. Hence, another detailed statement would be superfluous. Suffice it to repeat that this concursus proceeding involves the legal title to a portion of the bed of Grand Bay in Plaquemines Parish, located in Sections 17, 19, 20 and 22, T. 9 S., R. 18 E., wherein eight producing oil wells are situated. The private claimants, known as the Beckwith Group, are the holders of a patent covering the disputed area, which was issued by the State in 1874 to their ancestor in title, John Beckwith. But the State maintains, among other things, that this patent is invalid as to that part embracing the bed of Grand Bay, a navigable body of salt water connecting with the Gulf of Mexico, forasmuch as the bottoms of navigable waters are common or public things and are not susceptible of private ownership.
In our original opinion, we concluded that this contention of the State was of no avail in view of Act No. 62 of 1912, which effectively barred all proceedings by it or anyone else to vacate or annul any patent issued by the State, when the patent was duly signed by the Governor and Register of the State Land Office and of record in the State Land Office, unless brought within six years from the passage of the statute, with respect to patents issued previous thereto. This resolution was based on the previous rulings of this court in State v. Sweet Lake Land & Oil Co., 1927, 164 La. 240, 113 So. 333; Realty Operators v. State Mineral Board, 1942, 202 La. 398, 12 So.2d 198; O’Brien v. State Mineral Board, 1945, 209 La. 266, 24 So.2d 470 and Humble Oil & Refining Co. v. State Mineral Board, 1953, 223 La. 47, 64 So.2d 839.
Counsel for the State vigorously assail our decision, and some of the cases on which the ruling is predicated, professing that it does violence to and overrules by indirection Miami Corporation v. State, supra.
The question for decision in the Miami case, which was an action of boundary brought by a littoral owner of property extending to the shore line of Grand Lake, situated in Cameron Parish, was whether such owner would retain title to the eroded area of the abutting land which had become inundated by the encroachment of the lake upon the private property. In concluding, that the abutting owner would lose to the State all of the land which had become submerged and formed part of the bed of the lake, the court deduced that it was contrary to the policy established by the articles of the Civil Code, dealing with common and public things, to sanction the holding by individuals or corporations of any part of the bed of a navigable lake, bay, river or stream and that this type of property was not susceptible of private ownership.
*731 The practical effect of the opinion in the Miami case, which specifically overruled the divergent view announced five years before, 1931, in State v. Erwin, 173 La. 507, 138, So. 84, was to necessarily extend the provisions of Articles 509 and 510 of the LSA-Civil Code, which deal with the right of accession of owners of the soil situated on the edge or bank of a river or stream, so as to include other navigable bodies of water insofar as the right of accession by the State is concerned.[1] However, the decision is not pitched on the ground that the doctrine of accession by erosion is the governing factor but, as aforesaid, is predicated on the premise that it is contrary to the policy of the civil law to allow private individuals or corporations to hold navigable water bottoms and that Articles 450 and 453 of the LSA-Civil Code render such property insusceptible of private ownership.
While we take no issue with the pronouncement of the court, that it is inimical to the policy of our Civil Code to permit private ownership of the beds of navigable waters, the deduction that this policy is founded upon the insusceptibility of private ownership of water bottoms, is not wholly accurate. If, by the use of the word “insusceptible”, the court had in mind that navigable water bottoms or beds are incapable of private ownership, then we must respectfully disagree with that concept for, as pointed out in our original opinion, the court has acknowledged, on at least two other occasions, in State v. Richardson, 140 La. 329, 72 So. 984 and State v. Bayou Johnson Oyster Co. Limited, 130 La. 604, 58 So. 405, 410, that water bottoms, whether navigable or non-navigable, are lands not only susceptible of private ownership but, as stated in the Bayou Johnson Oyster Co. case, that “ * * * there is no legal impediment in the way of the state’s alienating such property in favor of particular individuals or corporations, * * * ” [2] Nor do Articles 450 and 453 of the LSA-Civil Code, which were cited by the court in the Miami case as authority for its conclusion that navigable water bottoms are insusceptible of private ownership, sustain such a view.[3]
Article 450 of the LSA-Civil Code defines common things as those things “the *733 ownership of which belongs to nobody in particular, and which all men may freely use, conformably with the use for which nature has intended them; such as air, running water, the sea and its shores”. Surely, the bottom of a stream, bay or lake is not within the same category as air, running water or the ever changing seashore and it cannot rightfully be classified to be incapable of private ownership and use merely because it is covered by water. To say that, because it is submerged, makes the difference between susceptibility or insusceptibility, would be contrary to basic principles of law recognizing the ownership in private individuals to the beds of non-navigable lakes, etc., which are also covered by water.
Article 453 of the Code, also cited in the Miami case, deals with public things, that is, those things which are not necessarily insusceptible of private ownership but which, because of their nature, are committed to public use exclusively.[4]
The important article of the Code, relative to the susceptibility of ownership of things, is Article 482 which provides that there are things which are not susceptible of private ownership and can never become the object of it “as things in common, of which all men have the enjoyment and use”. The second paragraph of the Article states that there are things which, although naturally susceptible of ownership, “may lose this quality in consequence of their being applied to some public purpose, incompatible with private ownership; but which resume this quality as soon as they cease to be applied to that purpose; such as the high roads, streets and public places.”
It seems to us that, if the bottoms of navigable lakes and bays can be included in Article 482, they fall within the class delineated in the second paragraph thereof for, whereas they are by their nature susceptible or capable of private ownership, their full enjoyment may be said to be somewhat impaired by reason of the superior rights of the government and the public to the unhampered use of the water above them for navigation, commerce, fishing and the like. Hence, as stated in the Miami decision, the bottoms or beds of navigable waters are public things within the contemplation of our Civil Code and it is contrary to the policy expressed therein to permit private interests to own them. This is what the case stands for, and no more.
Let us then consider whether that doctrine has been abrogated by the decision in the instant matter. At the outset, the State contends on this rehearing that the facts *735 of the case bring it squarely within the rule enunciated in the Miami case as there was some evidence submitted at the trial to support a finding that the submerged area where the eight well sites are located, which is presently covered by the navigable waters of Grand Bay, were swamp and overflowed lands in 1874 when the Beck-with patent was granted and that the probabilities are that this area gradually eroded and became submerged by the waters of the Bay. Accordingly, counsel say that, if this be so, it should be held that the Beck-with patent embracing the land'now submerged, although originally valid, has been lost to the Beckwith group by erosion.
This proposition is not impressive. Initially, it is to be observed that the contention, raised for the first time on rehearing, constitutes a complete reversal by the State of the position which it has previously adopted. That position was, as shown by the State’s answer to the concursus proceeding, that the patent issued to Beckwith in 1874 was invalid, as to the area upon which the eight well sites are located, because the submerged land which forms part of the bed of the navigable salt water bay (Grand Bay) was acquired by the State in 1812 in its sovereign capacity. Moreover, the evidence to which the State adverts as proof of the gradual conversion of the area from swamp lands in 1874 to navigable water bottoms at the present time, is highly speculative and not convincing.
We therefore pass on to a reconsideration of the main contention of the State, viz.: that the Beckwith patent was invalid when issued in 1874, insofar as it purported to convey title to that part of the bed and botfom of Grand Bay where the well sites are located, because of the State’s acquired ownership of these submerged lands as sovereign at the time of its admission to the Union in 1812. In assailing the patent, counsel for the State claim that the Governor and Register of the State Land Office were without authority to include in the conveyance those submerged lands. However, they acknowledge, as indeed they must, that the Legislature had the right to sanction the conveyance of such lands, notwithstanding any codal concept of public policy to the contrary, as there was no constitutional restraint on the power of the Legislature to dispose of the navigable water bottoms of the State prior to the adoption of the Constitution of 1921. Barnett v. State Mineral Board, 193 La. 1055, 192 So. 701; Standard Oil Co. v. Allison, 196 La. 838, 200 So. 273 and Realty Operators v. State Mineral Board, supra. Hence, it follows that, inasmuch as the Legislature had the right to authorize the issuance of a patent to the submerged lands, it was likewise empowered to subsequently ratify the action of the Governor and Register of the State Land Office in granting such a patent. And this, we found in our original opinion, is exactly what the Legislature did by the enactment of Act No. 62 of 1912.
*737 Nevertheless, counsel for the State insist that our resolution is erroneous and that it is contrary to the decision in the Miami case.
Since counsel admit the right of the Legislature to ratify and validate conveyances of this sort by State Officers, we find it difficult to perceive at the outset, how our original opinion and the views in the Sweet Lake, Realty Operators, O’Brien and Duck Lake -cases do violence to the Miami decision or in any wise conflict therewith, as that case did not involve the right of the State to assail a confirmatory title to submerged property issued under authority of the Legislature. Indeed, our decision herein, and the cases preceding it are founded on an entirely different principle of law from that upon which the Miami case is buttressed.
But, say counsel, the court was wrong in this and its other opinions in concluding that the Legislature, in enacting Act No. 62 of 1912, ever intended to ratify or confirm titles to the beds- of navigable waters contrary to the policies announced in the Civil Code.
Thus, the contention is not in reality that the court has rendered a decision contrary to the Miami case but rather that, in view of that pronouncement and the articles of the Civil Code on the subject, the court should have interpreted Act No. 62 of 1912 so as to exclude from its terms any patents which might embrace the beds or bottoms of navigable bays and lakes.
Let us see then whether such an interpretation as counsel for the State would give to Act No. 62 of 1912 is admissible. The substance of their lengthy argument is that, in view of the Miami case, the Articles of the Civil Code, the Oyster Statutes, Acts Nos. 106 of 1886; 52 of 1904; 189 of 1910; 54 of 1914; 139 of 1924; 67 of 1932, LSA-R.S. 56:421 et seq., and Act No. 258 of 1910, which are all declaratory of the public policy of the State with reference to its ownership of the waters and beds of navigable bays, lakes and rivers, Act No. 62 of 1912 should be construed so as to except from its provisions any patents issued which cover the bottoms of any navigable waters.
Act No. 62 of 1912, which is quoted in full in our original opinion, provides “ * * * That all suits or proceedings of the State * * * to vacate and annul any patent issued by the State * * * duly signed by the Governor of the State and the Register of the State Land Office, and of record in the State Land Office * * * shall be brought within six years * * (Italics ours.) Thus, the statute, by its explicit and unequivocal terms, bars all suits to annul any patent, irrespective of whether the patent covers high land or submerged land.
Applicable, here, is that fundamental canon of statutory construction set forth in Article 13 of the LSA-Civil Code that, when a law is clear and free from all ambiguity, “the letter of it is not to be *739 disregarded, trader the pretext of pursuing its spirit”.
But further than this, by delving into the spirit which prompted the passage of Act No. 62 of 1912, we experience no difficulty whatever in deducing that the Legislature intended that the Act was to be all-inclusive, in conformity with the language used therein. It takes no more than an examination of the various Oyster Statutes to make it evident that the Legislature of 1912 was intimately acquainted with the public policy of the State to retain title to all navigable water bottoms. This fact is made even more apparent by a reading of Act No. 258 of 1910, which was a general law reaffirming the State’s ownership of bayous, lagoons, lakes, bays, rivers and the beds thereof. See State v. Board of Com’rs of Caddo Levee District, 188 La. 1, 175 So. 678. Section 2 of that statute, which pertains exclusively to navigable waters, contains a proviso that the law “ * * * is not intended to interfere with the acquisition in good faith of any waters or the beds thereof transferred by the State or its agencies prior to the passage of this Act; * * * Accordingly, it is only reasonable to conclude that the Legislature, in enacting Act No. 62 of 1912, evinced, as part of its general overall purpose, the design of confirming these titles to navigable water bottoms, the existence of which was recognized in Act No. 258 of 1910, provided their validity was not contested within the prescribed six-year period.
Since it is plain, as above shown, that the Legislature of 1912 was well aware of the policy of the State to retain title to all navigable water bottoms (this fact being admitted by counsel for the State), we think it manifest that it employed the broad language and sweeping terms contained in Act No. 62 of 1912 deliberately, so that all doubts respecting the validity of any patent previously issued, in the form prescribed by the statute, would be set at rest, if the transfer was not assailed within the six-year period. Albeit, if the Legislature had the intention of excluding patents covering navigable water bottoms from the effect of the law, it would have been a very easy matter to have done so by an appropriate exception.
In the first case in which Act No. 62 of 1912 was pleaded as a bar to an action assailing a patent, Atchafalaya Land Co. v. F. B. Williams Cypress Co., 146 La. 1047, 84 So. 351, 358, decided in 1920, its provisions were unsuccessfully attacked on various grounds of alleged unconstitutionality. There, counsel for the plaintiff additionally argued that the patents were absolutely null and, similar to the contention of the State here, asserted that they were “ * * * not susceptible of confirmation by a statute of repose, because the officers who signed and issued them were without authority to do so, * * * ”. But the court answered that, since the patents were in the form described by the statute, it mattered not that the Governor and the Register of the State Land Office were *741 without authority to issue them as “ * * * the Legislature had authority to ratify and confirm their acts, as was done by the statute of repose”.
In the next case, that of Atchafalaya Land Co. v. Dibert, Stark & Brown Cypress Co., 157 La. 689, 102 So. 871, decided in 1925, the opinion of the court in Atchafalaya Land Co. v. F. B. Williams Cypress Co. supra, upholding Act No. 62 of 1912, was assailed as unsound but the court, after a reconsideration of the entire matter, affirmed its former view that the statute was one of repose and applicable to patents which were invalid, provided they were in the prescribed form.
The next case was the Sweet Lake case, supra, decided in 1927. There, the court found the statute to be applicable to all submerged lands, whether covered by navigable water or not.[5] Similar rulings were made in the Realty Operators case in 1942, the O’Brien case in 1945 and the Duck Lake case last year.
Yet, in the face of all of these decisions, and the circumstance that the Legislature has met many times since the first ones were rendered and apparently approved the interpretation given the statute by the court, by its failure to enact an amendatory law, counsel for the State would have us at this late date reverse our opinions, overrule the jurisprudence and hold that the Legislature, in 1912, did not mean what it said, when it provided that all patents theretofore issued would become unassailable within six years after the passage of the act, and that, in reality, it intended to except from its provisions patents to navigable water bottoms because transfer of that sort of property was contrary to the policy stated in the Civil Code which was recognized and enforced in the Miami decision.
This we will not and should not do. The manifest purpose of Act No. 62 of 1912 was to stabilize titles issued by the State over the signature of the Governor and Register of the State Land Office in cases wherein the State and other interested parties failed to contest the patents within a stated time. Thus, primarily, the act invited attacks on unauthorized patents and. did not effect immediate confirmation, as ample time, six years, was given to proceed. But, as we have heretofore said, when the stated time elapsed without action, the curative provisions of the law became operative and rendered all such patents unassailable.
*743 The argument of the State in this case is identical in principle with that of the tax debtor in our recent decision in King v. Moresi, 223 La. 54, 64 So.2d 841. There, the property had been sold for nonpayment of taxes to the wife of the Sheriff of the Parish, in direct violation of a prohibitory law, Act No. 94 of 1902, LSA-R.S. 47:2194, making it unlawful for any Sheriff or Tax Collector to buy either directly or indirectly any property offered for sale for taxes. The tax debtor sought to have the sale set aside on the ground that the transaction was void, ab initio, being contrary to public policy. But the court rejected this contention and sustained a plea of the five-year constitutional peremption interposed by the defendant, stating that the language of the Constitution was very broad and applied to all tax sales except those specifically excepted therein.
For these reasons and those set forth in our original opinion, it is ordered that that opinion and decree be and it is reinstated as the final judgment in this case.
LE BLANC, J., files concurring reasons.
FOURNET, C. J., and PONDER and HAWTHORNE, JJ., dissent and assign written reasons.

. This doctrine does not apply against the State with respect to accretion or subsidence of a navigable body of water. See State v. Jefferson Island Salt Mining Co., 183 La. 304, 163 So. 145.

. In State ex rel. Saint v. Timothy, 166 La. 738, 117 So. 812, 813, the court specifically rejected the contention that the bed of Lake Ponchartrain was a common thing as defined by Article 450 of the Civil Code. It said: “It will be noted that the illustrations given in the article, viz.: the air, running water, the sea and its shores, do not, even impliedly, include the beds of any waters”.

.But see Milne v. Girodeau, 1838, 12 La. 324, which characterized the bed of Lake Ponchartrain as not being susceptible of private ownership under Articles 440, 441, 442, 443 and 444 of the Code of 1825.

. It is significant that this article, in describing the kind of public things, enumerates “navigable rivers, - seaports, road-steads and harbors, highways and the beds of rivers, as long as the same are covered with water”. Nothing is said therein with respect to navigable lakes, bays, or the beds thereof.

. Counsel for the State contend that the ruling in the Sweet Lake case, applying Act No. 62 of 1912 to navigable water bottoms, was obiter dicta. Perhaps this is true but it is certain that the Attorney General was aware of the ruling and it is to be assumed that the Legislature became acquainted with it. Let, nothing was done by that body to amend the statute in order to obviate future rulings like that in this case, of which complaint is now belatedly made.