BREAUX, C. J.
Plaintiff brought this suit to compel the defendant’s acceptance of a title to land and payment of the sum of $2,-100, the price.
The defendant agreed to buy the land from the plaintiff on the 12th day of October, 1909.
*493 His attorney • found that the title is not good; that it was suggestive of litigation.
He rejected plaintiff’s title and refused to complete the purchase.
The land is within the area of St. Bernard parish, in township 14, S'., range 13 S., Eastern district, east of Mississippi, and is fully described in .plaintiff’s petition.
It is sea marsh of no great value.
Plaintiff acquired the land from John P. Miller on June 23,1909.
The latter acquired it from the hoard of commissioners for the Lake Borgne Basin levee district, in April, 1909.
The right bought by Miller was founded on a pre-existing contract, executed between him and the board of commissioners for the Lake Borgne Basin levee district.
Plaintiff’s contention is that there was a complete written agreement whereby Miller acquired a vested right to the land.
The board of commissioners acquired it from the state of Louisiana on April 22, 1909, in accordance with provisions of section 11 of Act No. 14 of 1892, by deed of the Register of the State Land Office and the Auditor, duly registered in the conveyance office of St. Bernard.
The state acquired it from the United States on April 15, 1909, in accordance with the provisions of the swamp land grant act of 1849 and 1850, 9 Stat. 519, e. 84. The list 113 was duly approved.
The United States acquired these lands from the territory of Orleans on February 20, 1811, by the provisions of the enabling act of Congress of the United States, authorizing the citizens inhabiting the territory of Orleans to adopt a Constitution and create the state of Louisiana, whereby all of the waste and unappropriated lands became the property of the United States.
This land was acquired from the government of France by the treaty of April 30, 1803.
We will not go further and specifically state that it passed from France to Spain in accordance with the treaty made between' these two countries in 1763, and from the latter to the former by another treaty, to say nothing of the right springing out of discovery and of settlement, which time has made forever unalterable.
The plaintiff recites fully all the particulars and incidents connected with and growing out of his title.
The defendant admits the agreement to purchase from plaintiff the land described in plaintiff’s petition.
He attacks the title on the ground that at the sale by the board of commissioners, as above stated, the land belonged to the general government; that, while it is true that they had been selected, the selection had not been approved by the Interior Department, as required.
Further defendant urged that under the terms of the act of the Legislature creating the board of commissioners of the Lake Borgne Basin levee district, the land did not rest in the board until the deed signed by the Auditor and the Register was duly recorded; that the lands were not owned by the state.
Defendant alleges that in 1908 Act No. 215 was adopted, ordering the sale of. all state lands, and lands of the levee boards at public auction.
That, notwithstanding the good faith of all parties connected with these sales, they were ultra vires acts, which vested no title.
The facts are that the board of commissioners granted a written option to Mr. Albert Estopinal, who wished to purchase the land.
He subsequently transferred his option to John F. Miller.
In December, 1903, the levee board adopted a resolution recognizing the transfer from Estopinal to Miller, and transferred this op *495 tion to Miller on terms and conditions, stated-in the agreement.
. Miller liad accepted this option and complied with the terms and conditions. I-Ie paid the cash required, had surveys made, and paid out moneys for the board in accordance with the agreement in question, in order to obtain approval of the general government of the selection which had been made of the land.
The levee board could not have done this, for the good reason that it had no funds to expend for the purpose.
The contention of plaintiff is that Miller, by executing the agreement as just stated, acquired a right to the land.
The lands were embraced in the option and agreement of December, 1903, between the levee board and John E. Miller, and became Miller’s in fee simple by sale, before referred to, made to him by the board in 1909.
These lands at said date had been selected by the federal government under the provisions of the swamp land grant acts of Congress of 1849 and 1850.
The first objection of defendant is that the option or promise of sale was given at a time when the land title was not in the levee board. It was owned by the federal government, it is contended. They had been selected by the .state, but the selection had not been approved at the date of the promise to sell, and that, in consequence, the board’s actions are ultra vires.
We can only say: Lands granted under the swamp land acts are granted in prmsenti, subject, it is true, to the approval of the Secretary of the Interior.
' It was the land of the state.
The point presented is whether it was a grant in praísenti?
We decide that it was, and that is the extent of our decision. It was not land of the United States -from the date of the grant, except to- the extent necessary for. it to pass absolutely under the control and dominion of the grantee.
The title remained in the government in a sense, subject to the laws of the state, as soon as it inured to the state by selection as swamp land.
When it passed from the United States to the state government, it became subject to the laws of the latter, and the title relates back to the date of the grant in 1849 and 1850.
This brings us to defendant’s ground of objection that the title to the land under the statute did not pass to the board of commissioners for the levee district until the deed signed by the Auditor of the State and by the Register of the State Land Office was recorded in the conveyance records of the parish where the land was situated.
The mandate of the lawmaker and the authority vested in the board are that the president shall have the conveyance properly recorded in the recorder’s office of the respective parishes in which the land is located, and when said conveyances are so recorded the title to said land passes to the levee board.
When the land was sold by the levee board in 1909, the law had been complied with. Acts in due form, properly signed by the Auditor and the Register of the Land Office, had been duly recorded in the office of the clerk !of the parish.
The board had given an option or promise of sale to plaintiffs’ ancestor in title. 1-Ie had paid the amount required to make good this option. The board subsequently consented, as before stated, to the transfer of this option by Estopinal to plaintiff.
The land was vested in the board.
The board had authority to buy and sell property, to make and execute all contracts. Section 7, p. 21, Act No. 14 of 1892.
The defendant’s contention further is that the General Assembly at its session in 190S *497 enacted Act No. 215 of the statutes of that year.
The act provides for the sale of all lands owned by the state or by any of the levee hoards at public auction, after due advertisement.
There had been a prior contract made, and under it the purchaser had acquired a right, to which the board gave its recognition by its own act.
The new method of disposing of the public lands of the State, under said Act No. 215, did not divest the right acquired under the option.
A similar question was decided by the Supreme Court of the United States. Pennoyer v. McConnaughy, 140 U. S. 1, 11 Sup. Ct. 699, 35 L. Ed. 363.
The land commissioners, in the cited case above, had enforced a similar contract, which the parties attacked on grounds similar to those here.
The court accepted the construction placed upon the act by the land commissioners.
The cited act above, No. 215 of 1908, has application to future sales, and to lands not subject to contract as this was. It was a subsisting valid contract.
The other questions raised by defendant are covered by our decision. There is no necessity of deciding every proposition submitted, as they are met by the conclusion at which we have arrived.
The law and the evidence being in favor of plaintiffs, the judgment appealed from is affirmed.