This is an action to annul a lease for oil and gas and other minerals, and to annul a sale of the forest timber, on 40 acres of land in La Salle parish, in the Tensas Basin levee district, and to compel the state auditor and the register of the state land office to make a deed of the property, including the mineral rights and timber, to the plaintiff, board of commissioners of the levee district. The defendants are Henry E. Hardtner, having the mineral lease, the Urania Lumber Company, claiming the timber on the land, the sheriff of La Salle parish, whose predecessor in office, under direction of the register of the state land office, sold the timber to the Urania Lumber Company, and the state auditor and the register of the land office, whose duty it is to make formal conveyances of the lands in the levee district to the board of commissioners. The defendants pleaded that the land belonged to the state and not to the levee board when the *Page 634 
mineral lease was made to Hardtner, under authority of the Act 30 of Extra Session 1915, p. 62, and when the timber was sold to the Urania Lumber Company, under authority of the Act 230 of 1918, p. 414, and that the plaintiff's petition, therefore, did not show a cause or right of action. The defendants pleaded also that, if the levee board had the right, before the mineral lease was made or the timber sold, to demand a conveyance of the land from the state auditor and the register of the state land office, the levee board did not avail itself of the right, but neglected to make the demand before the mineral lease was made to Hardtner and the timber sold to the lumber company, the mineral lease and the timber sale each having been made to the highest bidder and after advertisement in the official journal of the state and in the official journal of the parish of La Salle, the mineral lease after 15 days' advertisement and the sale of the timber after 30 days' advertisement, and that the levee board was, by its acquiescence and long neglect to demand a conveyance from the auditor and the register of the land office, estopped to contest Hardtner's or the lumber company's title. The defendants pleaded also that the state's grant to the levee board of all lands belonging to the state within the levee district was not a grantin præsenti, but only a conditional grant, which was subject to revocation by the Legislature at any time and as to any land not actually transferred to the levee board by an instrument of conveyance signed by the state auditor and the register of the land office and duly recorded, and that, as to the mineral rights and the timber on this 40-acre tract, which had not been so conveyed to the levee board, the Legislature repealed and revoked the grant to the levee board, by the Act 30 of Extra Session 1915, applying to the mineral rights, and by the Act 230 of 1918, applying to the timber on the land. *Page 635 
The case was submitted on the pleadings and a copy of the mineral lease and timber deed, and on an agreed statement of facts. There was judgment for the plaintiff as prayed for, Hardtner and the lumber company (of which he is president) and the state auditor and register of the state land office have appealed from the decision.
There is no controversy about the facts of the case. The land was granted, selected, and approved to the state under the swamp land grant of March 2, 1849 (9 Stat. 352, c. 87), and was a part of the land belonging to the state and embraced within the Tensas Basin levee district when the district was created by the Act 59 of 1886, p. 96, and when the act was amended by the Act 77 of 1888, p. 83, and by the Act 103 of 1892, p. 134, and by the Act 141 of 1910, p. 217.
By the ninth section of the act of 1886, the board of levee commissioners was authorized to levy an annual contribution or assessment not exceeding 10 cents an acre on all lands in the district subject to taxation, for the purpose of raising funds for the district; but the statute did not contain a grant of any land to the board of commissioners. By the second section of the Act 77 of 1888, the ninth section of the act of 1886 was amended by reducing the taxing authority to 5 cents an acre, and by adding the following quoted paragraph, granting to the board of levee commissioners all lands belonging to the state within the levee district, which paragraph has not been altered by any provision in the subsequent amendments of the act, viz.:
 "That, in order to provide additional means to carry out the purposes of this act, * * * all lands now belonging, or that may hereafter belong to the state of Louisiana, and embraced within the limits of the Tensas Basin levee district as herein constituted, shall be, and the same are hereby given, granted, bargained, donated, conveyed and delivered unto said board of levee commissioners of the Tensas Basin levee district, whether said lands or [are] parts of the lands originally granted by the Congress *Page 636 
of the United States to the state, or whether said lands have been, or may hereafter be, forfeited to, or bought in by or for, or sold to the state, at tax sales for nonpayment of taxes; where the state has, or may hereafter become the owner of lands, by or through tax sales, conveyances thereof, shall only be made to said board of levee commissioners after the period of redemption shall have expired; provided, however, that any and all former owners of lands which have been forfeited to purchasers by [sic], or sold to the state for nonpayment of taxes, may at any time within the six months next ensuing after the date of the passage of this act redeem said lands, or any of them, upon paying to the treasurer of the state all taxes, interest, costs and penalties due thereon down to the date of such redemption, but such redemptions shall be deemed and be taken to be sales of lands by the state, and all and every sum or sums of money so received shall be placed to the credit of the Tensas Basin levee district. After the expiration of said six months it shall be the duty of the auditor and the register of the state land office, on behalf of and in the name of the state, to convey to the said board of levee commissioners, by proper instruments of conveyance, the lands hereby granted or intended to be granted and conveyed to said board, whenever from time to time said auditor and said register of the state land office, or either of them, shall be requested to do so by said board of levee commissioners or by the president thereof; and thereafter said president of said board shall cause said conveyances to be properly recorded in the recorder's office of the respective parishes wherein said lands are or may be located, and when said conveyances are so recorded the title to said lands, with the possession thereof, shall, from thenceforth vest absolutely in said board of levee commissioners, its successors or grantees; said lands shall be exempted from taxation after being conveyed to and while they remain in the possession or under the control of said board. Said board of levee commissioners shall have the power and authority to sell, mortgage, pledge or otherwise dispose of said lands in such manner and at such times and for such prices as to said board shall seem proper, but all proceeds derived therefrom shall be deposited in the state treasury to the credit of the Tensas Basin levee district, and shall be drawn out only upon the warrants of the president of said board, properly attested as provided in this act."
By the Act 30 of Extra Session 1915, the Legislature authorized the Governor, on certain *Page 637 
terms and conditions, "to lease any lands, including lake and river beds and other bottoms, belonging to the state of Louisiana, for the development and production of oil, coal, gas, salt, sulphur, lignite and other minerals." The repealing clause of the act repealed all laws and parts of laws in conflict therewith and declared that nothing contained therein should have the effect of annulling or impairing in any way contracts of lease theretofore executed "covering any such property." One of the two questions to be decided is whether this statute of 1915 revoked the donation made to the board of commissioners of the Tensas Basin levee district by the Act 77 of 1888 (amending the ninth section of the Act 59 of 1886), so as to withdraw from the donation the minerals or mineral rights in the lands within the levee district but not yet conveyed to the levee board by an instrument of conveyance signed by the auditor and the register of the state land office and duly recorded when the Act 30 of Extra Session 1915 went into effect.
On the 22d of January, 1924, the Governor of Louisiana, after due advertisement for 15 days, as provided by the Act 30 of Extra Session 1915, leased to Henry E. Hardtner the 40-acre tract of land in contest, "for the purpose of exploiting the same for and producing therefrom oil, gas or other minerals." The lease was made for the customary one-eighth royalty and for a cash bonus of $50, and with the obligation that the lessor should pay a rental of $50 a year to keep the lease in force for 5 years if oil, gas or other mineral was not being produced in paying quantities at the beginning of each year. Hardtner had paid the rentals to the state treasurer and received his receipts for two years when this suit was filed.
By the Act 230 of 1918, the Legislature provided for the sale of "timber on the property of the state of Louisiana," by the sheriffs, under direction of the register of the *Page 638 
state land office. The repealing clause of the act repealed all laws or parts of laws inconsistent with or contrary to the act. The other question to be decided, therefore, is whether the Act 230 of 1918 revoked the grant made to the board of commissioners of the Tensas Basin levee district by the Act 77 of 1888 (amending the ninth section of the Act 59 of 1886), so as to withdraw from the grant the forest timber on the lands within the levee district but not yet conveyed to the levee board by an instrument of conveyance signed by the state auditor and the register of the state land office and duly recorded when the Act 230 of 1918 went into effect.
On the 17th of May, 1924, the sheriff of La Salle parish, under direction of the register of the state land office, sold the standing timber on the 40-acre tract in contest to the Urania Lumber Company, at public auction, after advertisement for 30 days in the official journal of the state and in the official journal of the parish of La Salle. The price paid was $350; and, deducting $36.05 for the costs of the sale, the sheriff remitted the balance, $313.95, to the state treasurer.
In their brief, the state auditor and the register of the land office say that they have no objection to signing an instrument of conveyance for the 40 acres of land, reserving, however, the mineral rights and timber on the land. They propose to reserve for Hardtner the mineral rights which were intended to be granted to him by the contract of lease, and to reserve to the Urania Lumber Company the ownership of the timber on the land, and to reserve to the state the mineral rights, subject to Hardtner's lease, the cash bonus and rentals already paid by him, and the rentals and royalties to be paid hereafter under his lease, and the cash price that was paid by the Urania Lumber Company for the timber on the land.
No one has any personal or private interest in this suit, except that Hardtner and the *Page 639 
Urania Lumber Company prefer, of course, that their contracts should stand, rather than to look to the Legislature for reimbursement of the sums which they have paid into the state treasury, and to negotiate anew, and with the levee board, for the mineral rights and timber on the land. It does not concern any one — public official or private citizen — except to know whether the Legislature intended, as the wiser public policy, that the mineral rights and forest timber on the lands which were donated by the state to the several levee boards throughout the state should belong to the levee boards and be subject to sale or other disposition by them, or should be withdrawn from the grants to the levee boards and be subject to sale by the officers of the state land department, under the general land laws of the state.
The question to be decided, stated broadly, is whether the Legislature, by the Act 30 of Extra Session 1915 and the Act 230 of 1918, respectively, repealed and revoked in part the land grant which had been made by the Act 77 of 1888, and withdrew from the grant, first, the mineral rights, and, afterwards, the standing timber, on the lands within the levee district but not yet conveyed to the levee board by instruments of conveyance signed by the state auditor and the register of the state land office and duly recorded when the act of 1915 and the act of 1918, respectively, went into effect. If those statutes had that effect upon the grant which had been made to the Tensas Basin levee district, they had the same effect upon the grants which had been made to the boards of commissioners of the other levee districts throughout the state, because the act creating each district contains a similar grant of all lands belonging then or thereafter to the state, within the district, in the same language which we have quoted from the Act 77 of 1888. See, for example, the Act 79 of 1890, p. 67, creating the Red River, Atchafalaya and Bayou *Page 640 
Boeuf levee district; Act 97 of 1890, p. 112. creating the Atchafalaya Basin levee district; Act 13 of 1892, p. 15, creating the Lafourche Basin levee district; Act 46 of 1892, p. 53, reorganizing the Red River, Atchafalaya and Bayou Boeuf levee district; Act 74 of 1892, p. 98, creating the Caddo levee district; Act 89 of 1892, p. 117, creating the Bossier levee district; Act 24 of 1898, p. 30, creating the Grand Prairie levee district; Act 109 of 1904, p. 235, creating the Red River and Bayou des Glaizes levee and drainage district; and Act 160 of 1900, p. 243, extending the geographical limits of the Caddo levee district.
If the Act 30 of Extra Session 1915 had the effect of partially revoking the land grants theretofore made to the several levee boards throughout the state, and of withdrawing from the grants the mineral rights in the lands not theretofore conveyed by recorded instruments of conveyance signed by the state auditor and the register of the state land office before the act of 1915 went into effect, the act of 1915 must have had the effect also of withdrawing from the levee boards throughout the state the authority to dispose of the mineral rights in any such lands. For example, the board of commissioners of the Caddo levee district was, by the Act 268 of 1908, p. 394, "authorized and empowered to lease or farm out the gas, oil or mineral lands within the limits of said district." If the repealing clause in the Act 30 of Extra Session 1915 had the far-reaching effect which the learned counsel for the appellants contend it had, it must have repealed the Act 268 of 1908, except only with regard to lands that were conveyed to the levee board by instruments duly recorded before the act of 1915 went into effect.
The question presented in this case was virtually decided in State ex rel. Board of Commissioners of the Tensas Basin Levee District v. Grace, Register of the State Land Office, et al.,161 La. 1039, 109 So. 830. In *Page 641 
that case the state auditor and the register of the land office refused to sign an instrument of conveyance to the levee board, for lands within the levee district, without reserving therefrom the mineral rights in the land. They contended that the provisions of the second section of article 4 of the Constitution of 1921 compelled them to reserve the mineral rights in any lands which they were obliged to convey to the levee boards throughout the state, by the acts creating them and donating to them, respectively, the lands within their levee districts. The constitutional provision referred to reads thus:
 "In all cases the mineral rights on any and all property sold by the state shall be reserved, except where the owner or other person having the right to redeem may buy or redeem property sold or adjudicated to the state for taxes. This, however, shall not prevent the leasing of such lands and rights for mineral or other purposes."
We construed that language, in the decision cited, to mean, with regard to lands which the Legislature had granted to the levee board, but which had not been formally conveyed by an instrument signed by the state auditor and the register of the state land office and duly recorded, that the state auditor and the register of the state land office should not reserve the mineral rights in making the instrument of conveyance to the levee board, but that the levee board itself should reserve the mineral rights, in selling or otherwise disposing of the lands after obtaining and recording the instruments of conveyance to the levee board. And in deciding the case we disposed of a plea of estoppel similar to the plea which the appellants rely on in this case. Here is what the court said, referring to the very grant which we are now dealing with:
 "We think that the auditor and the register are in error when they say that the constitutional provision, cited, repeals, even partially, Act 103 of 1892, in so far as relates to the making of the grant, made in that act, or that it revokes *Page 642 
to any extent that grant. The Tensas Basin levee district was created and organized by the state as a means of discharging its duty to protect the lands in said district from inundation. The district is a state agency, created and continued in existence by the state with the foregoing purpose in view. The state, should it transfer the land to the district, including the mineral rights, in accordance with the grant made by it, would not be parting with the property within the meaning of the constitutional section cited, but would only be placing it under the control of one of its agencies for the purpose of constructing and maintaining levees. The land would, to all practical intents and purposes, still be the property of the state. The district could not sell it without reserving to itself the mineral rights, for the reason that its creator, for whom it holds, could not do so. We see no reason, therefore, in so far as the section of the Constitution, cited, is concerned, why the auditor and the register should not execute the conveyance.
 "Defendants plead, in their answer, that relator is estopped to ask that said land be conveyed to it now, because for 37 years it has made no effort to have the land certified to it, making none until a prospect arose of bringing in an oil field in the vicinity of the property, and hence that relator has abandoned the property. The plea is not discussed in defendant's brief, and for that reason we presume it has been abandoned. The plea cannot be sustained. The act making the grant contemplates that the donation should remain open for acceptance and confirmation indefinitely. Act 103 of 1892; State ex rel. Atchafalaya Basin Levee Board v. Capdervielle, 142 La. 111, 76 So. 327; State ex rel. Board of Commissioners, Caddo Levee District v. Grace, 145 La. 962-966, 83 So. 206. There is no basis whatever appearing here for a plea of abandonment or estoppel."
It is contended by counsel for the appellants that our statement in the decision quoted, that the transferring of land from the land department of the state to one of the levee boards, pursuant to the legislative land grant, was not such a disposition of the state's land as is contemplated in the provisions of the second section of article 4 of the Constitution, cannot be reconciled with all that was said afterwards in the case entitled State v. Standard Oil Co. et al. (No. 27848) ante, p. 334, 113 So. 867. There is no *Page 643 
inconsistency whatever in the two decisions. In State v. Standard Oil Co. et al., the Caddo levee board, on the 10th of October, 1910, leased to the Pure Oil Company, for mining purposes, a tract of land which had been transferred to the levee board by a recorded instrument of conveyance signed by the state auditor and the register of the state land office on the 6th of July, 1901. The title to the land was therefore vested absolutely in the levee board when the lease was made. By an error of the surveyor a part of the land — on which part the Pure Oil Company afterwards drilled three producing wells — was accidentally omitted from the description in the contract of lease. By a compromise agreement made in a suit by the state against the levee board, on the 14th of November, 1921, the land on which the three wells had been drilled was retroceded by the levee board to the state. Thereafter the Attorney General brought suit in the name of the state, charging that the Pure Oil Company was answerable to the state for $130,378.78, being the value of seven-eighths of the oil produced from the three wells, as a trespasser upon land belonging to the state. We affirmed the ruling of the district court that, inasmuch as the levee board owned the land when the oil was produced, the right of action against the Pure Oil Company, if there was any such right of action, belonged to the levee board, not the state. We quoted from the decision in State v. Tensas Delta Land Co., 126 La. 59, 52 So. 216, the direct statement that the Attorney General could not maintain a suit in the name of the state on a right of action which, if it existed at all, belonged to the board of commissioners of one of the levee districts of the state. A rehearing was refused in State v. Tensas Delta Land Co. in April, 1910, and, on the 19th of August of that year, the Legislature, in extra session, enacted a law (Act 3 of Extra Session of 1910) making it the duty of the Attorney General, *Page 644 
on the request of the Governor, "to represent the state or any political agency or subdivision thereof, in any suit in any court involving title to any land or real property belonging to the state * * * or any of its political agencies or subdivisions, whether the title to said land or real property is vested in or appears in the name of the state or in the name of any of its political agencies or subdivisions." Thereafter the Attorney General undertook to intervene, in the name of the state, in the suit between the same levee board and the same Tensas Delta Land Company, and to set aside or appeal from a judgment of compromise between the levee board and the land company. The case having been removed to the United States District Court for the Western District of Louisiana, that court denied the Attorney General the right to intervene in the name of the state, and denied him an appeal from the judgment of compromise. The Attorney General applied to the United States Circuit Court of Appeals for the Fifth Circuit for writs of certiorari and mandamus, which were refused, and he then obtained from the Supreme Court of the United States a writ of certiorari to review the rulings of the other courts. The Supreme Court of the United States held that the true and correct construction which had been given to the Act 3 of the Extra Session of 1910 was that the Attorney General should sue in the name of the state only on rights of action belonging to the state, and in the name of the proper political agency or subdivision of the state on rights of action belonging, respectively, to them, and that the Attorney General, therefore, could not maintain his intervention in the name of the state on a cause or right of action belonging to a political agency or subdivision of the state. Here is what the court said (United States ex rel. Louisiana v. Jack, Judge, 244 U.S. 404, 37 S. Ct. 605, 61 L. Ed. 1227), viz.: *Page 645 
 "The claim made by the Attorney General for the state now is that this act [Act 3 of Extra Session of 1910] `withdrew the authority theretofore granted to the levee board by section 3 of the Act of 1886 to sue in such cases as this, with all of the rights pertinent to the right to sue and delegated it, through the Governor, to the Attorney General.'
"This is a large repealing effect by implication to be asserted for a statute so worded and apparently so simple, and that such meaning was not given to it by the present Attorney General's predecessor in office, who was charged with the execution of the statute at the time this litigation was commenced and almost immediately after its enactment, is clear from these facts appearing of record: [Here the court reviewed the facts showing the construction which had been given to the act.] * * *
"The first time that this astonishing assertion of a repeal by implication by the Act of August 19, 1910, appears in the record, so far as we can discover, is in the brief filed by a third Attorney General on April 30, 1917.
 "This summary of the proceedings in the case out of which the petition we are considering grew shows that the predecessor of the present Attorney General, who was in office when the act of 1910 was passed, and also the Attorney General who succeeded him, both contended, until nearly six months after the entry of the settlement decree, that the Supreme Court [of Louisiana] had settled as the law of the case that the state was without title or beneficial interest which would enable it to maintain a suit to set aside the sale alleged to be fraudulent; that the proper plaintiff in such a case was the levee board to which the state had committed the title, custody, and power of disposition of the lands in controversy, and also, apparently, that the purpose of the Act of August, 1910, was simply to authorize the Attorney General, on the request of the Governor, to take charge (in this case with another solicitor) of a suit to be instituted by the levee board, and thereby to place his professional learning and the weight of his official character at the service of this plaintiff, an `agency or subdivision' of the state. Both Attorneys General assumed that the powers of the state and of the levee board over the subject-matter continued as the Supreme Court had defined them to be before the Act of August, 1910, was passed, and, as we have seen, it was not until long after the entry of the settlement decree that the contention first appeared that the act took away from the levee board and gave to the state the authority to conduct the required litigation. This contemporary construction of the act by *Page 646 
two law officers of the state charged with acting under it is persuasive authority as to its true meaning, and, upon full consideration, we think it is the correct interpretation of it."
It was not the present Attorney General or any one of his assistants who contended for the so-called "astonishing" and "large repealing effect by implication," which was so emphatically rejected by the decision quoted.
The contention that the Act 30 of Extra Session 1915 and the Act 230 of 1918 partially repealed and revoked by implication the land grants which had been made to the several levee boards throughout the state is only a repetition of the argument that was made with regard to the Act 215 of 1908, p. 319, which annulled all applications then pending in the state land office for the entry or purchase of public lands, and provided that thereafter all sales of "lands belonging to the state of Louisiana" should be made at public auction, after 30 days' advertisement. The repealing clause in the act of 1908, as in the Act 30 of Extra Session 1915 and in the Act 230 of 1918, repealed all laws or parts of laws in conflict therewith. Thereupon the register of the state land office, with the approval of the state auditor, undertook to sell, as "lands belonging to the state," the lands in the several levee districts but not yet conveyed to the levee boards by instruments signed by the register and auditor. This court ruled, in State ex rel. Atchafalaya Basin Levee Board v. Capdervielle, Auditor, et al., 142 La. 111, 76 So. 327, and in Atchafalaya Land Co. v. Grace, Register, et al.,143 La. 637, 79 So. 173, and in State ex rel. Board of Commissioners of Caddo Levee District et al. v. Grace, Register, et al.,145 La. 962, 83 So. 206, that the lands which had been granted to the several levee districts, though not yet conveyed to the levee boards by instruments of conveyance signed by the register of the land office and the state auditor, were not to *Page 647 
be regarded as "lands belonging to the state of Louisiana," and that such lands were not subject to entry or purchase at the state land office, because they had been withdrawn from the effect of the general land laws of the state.
In State ex rel. Atchafalaya Basin Levee Board v. Capdervielle, Auditor, et al., supra, it was said, in the syllabus of the decision:
 "Act No. 97 of 1890 contemplates that the donation of land to the Atchafalaya Basin levee board therein contained should stand open, indefinitely, for acceptance, and that the land should be conveyed to the board, from time to time, as requested by it, and that act is unaffected by Act No. 215 of 1908; hence the request which the board now makes of the state auditor and register of the state land office to execute conveyances of the land so donated is as well within the law as it has ever been, and, as the ministerial duty rests upon those officers to comply with that request, mandamus will lie to compel such compliance."
In the text of the decision it was said:
 "It is said that the grant to relator did not vest title until supplemented by acts of conveyance, to be executed by the auditor and register. It has, however, several times been held by this court that such grants, at least, operate to withdraw the lands affected by them from the market. McDade v. Bossier Levee Board,109 La. 627, 33 So. 628; Hall v. Levee Board,111 La. 913, 35 So. 976; Hartigan v. Weaver, 126 La. 492, 52 So. 674."
In Atchafalaya Land Co. v. Grace, Register, et al., supra, the court said:
 "A purchaser from the board of commissioners of the Atchafalaya Basin levee district of land donated to it by Act No. 97 of 1890 has a standing in court to protect his title, by staying a sale of such land by the register of the land office to a third person under the supposed authority of Act No. 215 of 1908, though the act of conveyance of the land from the state to the board may not have been executed."
In State ex rel. Board of Commissioners of Caddo Levee District et al. v. Grace, Register, et al., supra, the court said:
 "When the state had, by the statute creating the Caddo levee district, agreed to transfer to the board any and all lands within the district, the officers of the land department had no authority to issue a patent to any one else for *Page 648 
land within the district. Any land in the district, appearing vacant on the records of the land office, was subject at all times to be claimed by the board of commissioners, so long as the grant was not repealed by legislative act."
The three decisions which we have just quoted were cited with approval of the doctrine there stated in Atchafalaya Land Co. v. F.B. Williams Cypress Co., 146 La. 1047, 84 So. 351, in Atchafalaya Land Co. v. Dibert, Stark Brown Cypress Co.,157 La. 689, 102 So. 871, and in Ellerbe v. Grace, Register,162 La. 846, 111 So. 185.
In McDade v. Bossier Levee District, 109 La. 625, 640, 33 So. 628, 634, it was said:
 "After the state had, by Act No. 89 of 1892, declared its purpose of donating the lands it owned within the limits of the Bossier levee district to the board of commissioners of said levee district, for the use and benefit of the district, it was not competent for the plaintiffs to acquire any rights in and to any portion of the lands so belonging to the state, and included within the limits of the district, under the terms of Act No. 21 of 1886, granting pre-emption rights to actual settlers; and their going upon the lands in question, under the circumstances, is held to have been in bad faith."
It is true that, in the decision just quoted, the court referred to the lands within the levee district but not formally transferred by instruments of conveyance signed by the state auditor and the register of the land office as "the lands so belonging to the state." But that has no significance. Such lands do belong to the state, in the sense that the state may revoke the donation at any time, even to the prejudice of a third person claiming title from the levee board, if the land so claimed was not conveyed to the levee board by a recorded instrument of conveyance signed by the state auditor and the register of the land office; for, until the land is so conveyed to the levee board, the board has not a disposable title. It was so decided in State v. Cross Lake Shooting Fishing Club, 123 La. 208, 48 So. 891; where the Legislature had, by the Act 171 of 1902, p. 324, authorized the *Page 649 
register of the state land office to sell the Cross Lake lands, at a certain minimum price per acre, and, for that purpose, in terms, repealed the Act 74 of 1892, creating, and the Act 160 of 1900, enlarging, the Caddo levee district; the repealing clause being as follows, viz.:
 "That Act No. 74 * * * for 1892 and Act No. 160 of * * * 1900 be, and the same are hereby repealed in so far as they may, in any way whatever affect any of the lands described herein, the same never having been transferred by the register of the state land office and the state auditor, nor either of them, by anyinstrument of conveyance from the state, as required by said act, to complete the title to same."
If the Legislature had intended by the Act 30 of Extra Session 1915 to repeal the grant of the mineral rights, or by the Act 230 of 1918 to repeal the grant of all the forest timber on the lands in all of the levee districts throughout the state, it is not at all likely that the repeal or revocation would have been left to implication instead of being made in unmistakable terms, as it was made in the Act 171 of 1902.
In Hall v. Board of Commissioners of Bossier Levee District,111 La. 913, 35 So. 976, the court again said:
 "No pre-emption rights could be acquired, under Act No. 21, p. 31, of 1886, on land in the Bossier levee district, after the passage of Act No. 89, p. 113, of 1892, donating those lands to that district."
The decision in Williams v. White Castle Lumber Shingle Co.,114 La. 448, 38 So. 414, cited by counsel for appellants, is not appropriate to this case. The plaintiff claimed title to a tract of land in the Atchafalaya Basin levee district, under a deed signed by the president and secretary, without authority of a resolution of the board of commissioners of the district. The defendant held a patent from the state, ratified and approved in the form of a quitclaim by the board of commissioners of the levee district. There *Page 650 
was no previous instrument of conveyance signed by the state auditor or register of the land office. The defendant's patent and quitclaim were recorded before the plaintiff's deed from the president and secretary of the levee board was recorded. All that was decided in the case was that the defendant's title should prevail.
In two other decisions cited by counsel for appellants (St. Paul v. Louisiana Cypress Lumber Co., 116 La. 585, 40 So. 906, and Hartigan v. Weaver, 126 La. 492, 52 So. 674) may be found some expressions which, taken alone, seem not quite consistent with the subsequent decisions on the subject; but the expressions referred to, in the two early decisions cited, were not necessary or important to the decision of either case, and should not be regarded now as reflecting doubt upon the well-settled jurisprudence on the status of these levee board titles. If that jurisprudence seems beclouded it must be because, as the great philosopher, John Locke, in his Essay Concerning the Human Understanding, said:
 "They who strip not ideas from the marks men use for them, but confound them with words, must have endless dispute."
The discussions that were necessary in the working out of that jurisprudence, as to whether the grants made by the state to the several levee boards were grants in præsenti or grants in futuro, have served their good purpose, and the question is not how important, except, perhaps, as an interesting subject for academic discussion. It is sufficient to say that the language of each and every grant gave to the board of commissioners of the levee district the right to demand and receive at any time an instrument of conveyance of any land belonging to the state and within the district, and, thereafter, "to sell, mortgage, pledge or otherwise dispose of said lands in such manner and at such times and for such prices as to *Page 651 
said board shall seem proper"; and, so long as these grants remain unrepealed by an act of the Legislature, the lands in the levee districts and belonging to the state, with all of the mineral rights and timber on such lands, remain subject to acceptance and sale or other disposition by the boards of commissioners of the levee districts, respectively, and are not subject to any other disposition by the register of the state land office and the state auditor, or by either of them, under the general land laws of the state. In that respect, the Act 30 of Extra Session 1915 and the Act 230 of 1918 are, like the Act 215 of 1908, among the general lands laws of the state.
The judgment is affirmed.
ROGERS, J., dissents.
THOMPSON, J., dissents with reasons.