If there is any one question that ought to stand as stare decisis in the jurisprudence of this state, it is that the grants by the state to the various levee boards were not grants in præsenti and that title and possession of the lands so granted remained in the state and under the control of the state until the conditions required to transfer ownership to the levee boards were complied with.
Thus in McDade v. Bossier Levee District, 109 La. 626, 33 So. 628, this court said:
 "The intention of the act was that neither the title to, nor the possession of, the lands donated was actually to vest in the levee board until the state officials named should have acted in the way the statute directs, and only when this was done, and the act of conveyance recorded, was the title and possession of the land so conveyed to vest absolutely in the board."
See, also, St. Paul v. La. Cypress Co., 116 La. 585, 40 So. 906; State v. Cross Lake Hunting and Fishing Club, 123 La. 208, 48 So. 891; Hartigan v. Weaver, 126 La. 492, 52 So. 674; State ex rel. Atchafalaya Levee Board v. Capdervielle, 142 La. 111, 76 So. 327; *Page 652 
Atchafalaya Land Co. v. Williams Cypress Co., 146 La. 1062, 84 So. 351.
The cited cases were all noted and affirmed in Atchafalaya Land Co. v. Dibert, Stark Brown Cypress Co., 157 La. 690,102 So. 871.
Another ruling of this court that ought to be accepted as logically and properly settled is that the levee boards are mere agents of the state and subject to the authority and control of the state Legislature at all times.
Thus this court said in the Williams Case, supra, that:
 "The reason why the state did not, by the act of the Legislature creating the levee district, lose control over the lands, is that the board of commissioners of the district was thereby made a state agency, subject to the authority and control of the state Legislature."
And, finally, in more definite and positive language, if possible, the present court said:
 "The district is a state agency, created and continued in existence by the state with the foregoing purpose in view. The state, should it transfer the land to the district, including the mineral rights, in accordance with the grant made by it, would not be parting with the property within the meaning of the constitutional section cited, but would only be placing it under the control of one of its agencies for the purpose of constructing and maintaining levees.
 "The land would, to all practical intents and purposes, still be the property of the state. The district could not sell it without reserving to itself the mineral rights, for the reason that its creator, for whom it holds, could not do so." State v. Grace,161 La. 1040, 1043, 109 So. 830, 832.
In 1915 the Legislature by Act No. 30, Extra Session, authorized the Governor to lease any lands including lake and river beds and other bottoms belonging to the state, for the development and production of oil, coal, gas, salt, sulphur, lignite and other minerals under the terms and conditions therein stated.
In 1918 the Legislature authorized the sale of the timber on any land belonging to the state; the sale to be advertised by the register of the state land office and to be made at *Page 653 
public auction by the sheriff of the parish wherein the land was located.
Acting under the authority of Act No. 30 of Extra Session 1915, Hon. John M. Parker, Governor, on January 22, 1924, executed an oil and gas lease in favor of Henry E. Hardtner, one of the defendants in this suit, on the 50 acres of land described in the petition.
And on May 17, 1924, the register of the state land office, through the sheriff of La Salle parish, conveyed all the timber on said lands to the Urania Lumber Company.
The price of the mineral lease, as also that for the timber, was paid into the state treasury and became a part of the public fisc.
The present suit is to annul the action of the Governor and of the register of the land office and to compel the state through the said register and the auditor to execute a deed to the land described, including the minerals and the timber.
The situation is peculiar. The case is without a parallel in jurisprudence.
The levee board, a mere agent of the state, the creature of the state, with no will except the will of the state, with no power except that delegated by its creator and principal, with no vested right in the lands or the minerals under the lands, or the timber on the land, seeks the aid of the state judiciary to compel mere clerical and ministerial officers of the state to comply with a mere executory promise of the grant and the court sustains that demand and orders the said clerical officers on behalf of the state to make deed to the land, minerals and timber against the protest of the executive and legal departments of the state.
But it is said the grant of the lands was not revoked by the acts of 1915 and 1918 because those two acts are of a general nature and do not repeal the special laws making the grants. The acts made no exception and the language is broad enough to authorize the Governor to lease all minerals under all lands *Page 654 
belonging to the state and the register of the state land office to sell the timber on all lands belonging to the state. The land in question belonged to the state. The state had not parted with the land and had the right to authorize the sale of the timber separate and apart from the land and to lease the minerals.
However, assuming that the contention is correct and that the acts referred to did not have the effect of recalling the grant, the fact remains that the executive department of the state construed the acts aforesaid as authorizing the sale of the timber and the lease of the minerals. If the Governor and other executive officers of the state erroneously interpreted the will of the legislative department, the fault ought not to be visited on an innocent purchaser, especially at the suit of the levee board, which can have no vested right in the minerals and timber until the deeds are executed and the grant is completed in the manner prescribed by law.
As before stated, the price of the minerals and timber has gone into the treasury of the state. There is no power to compel the officers to return the price.
This court is without authority to order the return of the money or to give judgment against the state.
I respectfully dissent.