**SMYTH et al. v. BOARD OF COM'RS FOR ATCHAFALAYA BASIN LEVEE DIST. et al.**

Civ. No. 478.

United States District Court, E. D. Louisiana.

Baton Rouge Div.

Dec. 1, 1949.

R. C. Milling, New Orleans, La., L. K. Benson, New Orleans, La., J. B. Miller, New Orleans, La., G. H. Pierson, Jr., New Orleans, La., for plaintiffs.

Ferd C. Claiborne, New Roads, La., Charles H. Dameron, Port Allen, La., attorneys for defendant Board of Commissioners for Atchafalaya Basin Levee District.

Bolivar E. Kemp, Jr., Attorney General, Carroll Buck, First Assistant Attorney General, John L. Madden, Special Assistant Attorney General, attorneys for defendants, Lucille May Grace, Register, State Land Office and L. B. Baynard, Auditor of Public Accounts for State of Louisiana.

BORAH, Circuit Judge.

The present controversy concerns the ownership of 8214.80 acres of swampland on Point au Fer Island in Terrebonne Parish, Louisiana. The land in question was omitted from the original government surveys of the island which were made in 1837 and 1838, and this error, when discovered in recent years, was corrected by a re-survey and a plat of said survey was approved by the General Land Office on April 10, 1943. Following this approval, the State selected all of the lands shown on this plat, other than fractional Section 16, as swamp and overflowed lands under the Swamp Land Grants of 1849 and 1850. This selection was approved on January 24, 1945, by Clear List No. 277.

Plaintiffs, Mrs. Mary A. Smyth, widow of Frank G. Nelson and John M. Smyth (who has since died and whose executors have been made parties plaintiff herein) claim to be the beneficial owners of the land in controversy, subject to the beneficial ownership of the plaintiff, The Louisiana Land and Exploration Company, of an undivided one-half ($\frac{1}{2}$) interest in and to the oil, gas and other minerals thereunder. Plaintiffs allege that said lands are swamp lands donated by the United States of America to the State of Louisiana, which were in turn donated by the State to the Board of Commissioners for the Atchafalaya Basin Levee District, by Act No. 97 of 1890 of the Louisiana Legislature, and that said Board, by contract dated July 9, 1900 (hereinafter called "Wisner and Dresser Contract"), conveyed all of said land to Edward Wisner and John M. Dresser, which contract covered all of the lands donated by the Legislature to the Board.

Plaintiffs allege that they acquired all of the rights of Wisner and Dresser under the Wisner and Dresser Contract and under certain conveyances made thereunder in and to all of the lands on Point au Fer Island and that, based on such ownership, they demanded on June 17, 1947, that the

Auditor and the Register prepare and execute an instrument of conveyance to the Board covering said omitted lands, but that said officials had refused to execute such conveyance. They also allege that they had demanded that the Board execute and deliver to them an instrument of conveyance covering all of said 8,214.80 acres of omitted lands and that the Board and its President request the Register and Auditor to transfer said lands to the Board, but that the Board had refused to comply with said demands.

In their complaint plaintiffs demand a judgment against the Board declaring:

(a) That plaintiffs are the beneficial owners of the property involved.

(b) That plaintiffs are vested with the entire interest of the Board in and to said lands, with the right to use the machinery, privileges and equities of the Board for the perfection of the titles to the lands in controversy.

(c) That the Board is obligated to lend itself with all of its rights, powers, privileges and prerogatives to perfect plaintiffs' titles in and to said lands.

(d) That the Board is obligated and required to request that the Register and Auditor execute to and in its favor a proper instrument of conveyance covering said lands and to cause the same to be recorded in the Conveyance Records of Terrebonne Parish, Louisiana.

(e) That the Board is required to execute and deliver to plaintiffs a written instrument herein and whereunder the Board shall recognize plaintiffs to be the owners of the property and quit-claiming to them, the plaintiffs, all of its rights.

(f) That plaintiffs were and are authorized and empowered and enjoyed the right to demand that the Board comply with the foregoing obligations and that their letter of June 30, 1947 evidenced a proper and legal demand upon the Board; and

(g) That the Board wrongfully refused to comply with said demands.

As against the Register and Auditor, plaintiffs demand is that the court declare that plaintiffs are vested with such interest in and to the lands in controversy as will entitle them to demand that the two officials execute a conveyance to the Board; that plaintiffs' letter of June 17, 1947 evidenced a legal demand; that it was the mandatory duty of the officials to comply with the demand therein contained; and that they wrongfully refused to comply with such demand.

Plaintiffs also demanded other relief, based on the judgment to be granted them, requiring the Board and the Register and Auditor to comply with the above demands, and enjoining said officials from disposing of the lands.

To this complaint, which has been analyzed only to the extent deemed essential for present purposes, the Register and Auditor filed an answer which in substance recited that they have no interest in this law suit other than to perform their duty as public officials; that the statute provides that they shall convey the lands when requested by the President of the Board; that the Attorney General had advised them not to make the conveyance when requested by plaintiffs; and that they submitted the matter to the Board and would abide by the judgment of the Board.

The defendant Board filed a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted. This motion was overruled. An answer was then filed on behalf of the Board, raising certain defenses which will hereinafter be considered, following which plaintiffs filed a motion for summary judgment under Rule 56 of the Rules of Civil Procedure for the United States District Courts, 28 U.S.C.A. Admitting that the pleadings with documents attached, and the admissions on file, together with the affidavits annexed to plaintiffs' motion, disclose that there is no genuine issue as to any material fact, the defendant Board has moved for a summary judgment in its favor. The Register and Auditor have done likewise and in support of their motion have adopted in toto the memorandum of authorities filed herein by defendant Board.

The parties thus concede, and rightly so, that there is in this case no genuine issue as to any material fact. It follows that Rule 56 has been properly invoked and

that the present controversy should be disposed of by a summary judgment.

The defendants admit that the land in contest was conveyed to the State as swamp land, by the Acts of Congress of March 2, 1849, 9 Stat. 352, and of September 28, 1850, 9 Stat. 519; that by section 11 of the statute creating the levee district, Act No. 97 of 1890, all lands then belonging or that might thereafter belong to the State and embraced within the limits of the district were donated to the governing body of that district, the Board of Commissioners. And, by the same section of the statute, it was declared the duty of the State Auditor and of the Register of the State Land Office on behalf and in the name of the State, to convey to the Board, by proper instrument of conveyance, all lands thereby granted or intended to be granted and conveyed to the Board, whenever from time to time either the Auditor or Register should be requested to do so by the Board or by the President of the Board, and that the title to the lands will thereupon be vested in the Board. It is also admitted that the Wisner and Dresser Contract was a promise to sell which became a perfect sale when the purchase price was paid in 1901. That when Wisner and Dresser paid the last installment upon the total purchase price of $120,000 they became vested with such right and title as the Board held to the lands acquired under the donation from the State, and that the ownership of the Board terminated and ceased to exist, and thereafter the only interest of the Board in any of said lands, was to lend its aid to Wisner and Dresser and their transferees in perfecting a clear title to said lands. This was the construction which the Supreme Court of Louisiana gave to the Wisner and Dresser Contract in Schwing Lumber and Shingle Company, Inc., v. Board of Commissioners of Atchafalaya Basin Levee District, 200 La. 1049, 9 So.2d 409.

The defendants seek to avoid the impact of this decision by contending that the lands involved therein had been conveyed to the Board by the Register and Auditor in September of 1899, and therefore the Board was the owner of the land on July 9, 1900, the date of the Wisner and Dresser Contract, whereas the lands herein involved were not selected by and approved to the State until 1943 and have never been transferred to the Board. And in the absence of such conveyance no title or ownership was vested in the Board and consequently the Board did not and could not convey title to the lands to Wisner and Dresser in July of 1900. This contention on the part of defendants constitutes their first and primary defense to the action and to that question we now turn.

The first defense to plaintiffs' action raises the same question heretofore considered on the motion to dismiss. It is and has been defendants' position from the beginning that the lands in controversy were not included in the Wisner and Dresser Contract. They maintain that these lands were not owned by the Board on July 9, 1900, the date of the execution of the contract, and that the Board could not on that date lay just claim thereto for the reason that the lands at that time had not been surveyed by the United States Government and had not been selected by or approved to the State.

The present issue is thus confined within narrow limits and its determination depends upon the meaning and intent of the Wisner and Dresser Contract.

Section 11 of Act No. 97 of 1890 declares that "*all* lands *now belonging,* or that *may hereafter belong* to the State of Louisiana * * * shall be, * * * donated, * * * unto said Board * * * whether said lands or parts of lands originally *granted by the Congress of the United States* to this State or whether said lands *have been,* or *may hereafter be,* forfeited to, or bought in by or for, or sold to the State, at tax sales * * *." This section of the statute further provided that after six months, the Auditor and Register should convey to the Board by proper instruments of conveyance the lands "hereby granted or *intended* to be granted and conveyed" whenever "*from time to time* [they] shall be requested to do so." (Emphases supplied.) This language clearly evidences the intention of the Legislature to donate to the State all lands then owned or which the State might thereafter acquire

under the Swamp Land Grants of 1849 and 1850, or by tax sale, and that the conveyances might be made from time to time upon request of the Board. This meant, as the Supreme Court of Louisiana has consistently held, that the Board might claim, "demand and receive at any time an instrument of conveyance of any land belonging to the state and within the district." Board of Commissioners of Tensas Basin Levee District v. Hardtner, 164 La. 632, 114 So. 494, 500. See also State ex rel. Atchafalaya Basin Levee Board v. Capdervielle, Auditor, et al., 142 La. 111, 76 So. 327; State ex rel. Board of Commissioners of Caddo Levee District v. Grace, 145 La. 962, 83 So. 206; Standard Oil Company of Louisiana v. Allison, 196 La. 838, 200 So. 273.

The Wisner and Dresser contract was executed on July 9, 1900. In accordance with its terms the Board (party of the first part) sold and conveyed to Wisner and Dresser the following property and rights: "All the lands donated, ceded and transferred by Act of the Legislature to the said party of the first part, to include all lands sold for taxes at this date but as yet not deeded to the State or to said party of the first part, but not to include lands hereafter accruing to the State at tax sale or to said party of the first part otherwise than by tax sales already made, to include, in other words, only lands at this date owned by said party of the first part, or to which said party of first part can at this date lay just claim, and also all lands heretofore sold at tax sale but for which a title has not been made to the State."

Later in the agreement there appears this pertinent paragraph: "It is further agreed and understood that the said party of the first part is to lend itself with all its rights, power and privileges and perogatives to perfect its title or the title acquired under this agreement to all lands which it could have and the parties of the second part can now justly lay claim to, and to do so whenever so requested by the party of the second part; all proceedings, however, to be at the expense of the party of the second part."

Considering now the language of the contract[1] for the purpose of ascertaining what was conveyed thereby, we find this initial language, *"All the lands donated, ceded and transferred by Act of the Legislature to the said party of the first part, * * *."* This clause severed from its context has but one meaning and that is that it was the intent of the parties that there should be conveyed all lands which had been donated by the State to the Board. And all the lands donated included, "all lands now belonging, or that may hereafter belong to the State * * * whether said lands or parts of lands originally granted by the Congress of the United States to this State, or whether said lands have been, or may hereafter be, forfeited to, or bought in by or for, or sold to the State, at tax sales". Consequently no limitation whatever is to be found in the first clause of the description.

Coming now to the second and succeeding clause in the contract, we find this language, "to include *all* lands *sold for taxes* at this date but as yet not deeded to the State or to said party of the first part, but not to include lands *hereafter accruing* to the State *at tax sale* or to said party of the first part otherwise than *by tax sales* already made, * * *." This clause unquestionably refers only to lands acquired at tax sales and excludes only those lands which might thereafter accrue to the Board by virtue of tax sales. The limitation included in this clause does not refer to and cannot refer to the swamp lands in contest here.

The next and last clause of the description like the preceding clause commences with the words "to include" and reads as follows: "to include, in other words, *only lands at this date* owned by said party of the first part, or to which said party of the first part can *at this date lay* just claim, and also all lands heretofore sold at tax sale but for which a title *has not been made to the State.*" Reading the clause in its proper setting I gain the very

1. Emphasis supplied throughout.

decided impression that it was intended to be explanatory of the previous clause which referred only to lands acquired at tax sale. If this be its construction, then it would follow that this last clause could not and would not impair the generality of the first clause of the description. To hold, as defendants contend that this last clause was intended to refer to swamp lands the court must completely ignore the second clause and hold that the parties intended in the last clause to refer back to the first clause. Such a strained construction is seemingly unwarranted. A more reasonable and proper construction, and one which will give effect to all its provisions would be to hold, as I do, that the first clause referred to all the lands donated, meaning all swamp lands and all tax lands covered by the donation, and that the last two clauses referred only to tax lands and were intended to exclude not all tax lands, but only those tax lands which had accrued to the Board subsequent to the date of the Wisner and Dresser Contract. Another reason for adopting this construction is clearly stated in two articles of the Civil Code of Louisiana which provide that:

"The seller is bound to explain himself clearly respecting the extent of his obligations: any obscure or ambiguous clause is construed against him." C. C. Art. 2474.

"In a doubtful case the agreement is interpreted against him who has contracted the obligation." C. C. Art. 1957.

■ If the sense of the contract may not thus be gathered from its words and their relation to each other then it must be said that the language used by the parties is indefinite or ambiguous, and, hence, of doubtful construction. The language employed in the Wisner and Dresser Contract does not definitely state that the swamp lands which had not heretofore been selected by and approved to the State, were excluded from and not covered by the terms of that contract. Consequently extrinsic evidence may be resorted to as an aid in construction.

■ The practical interpretation given to their agreement by the parties to it, while they are engaged in its performance, and before any controversy has arisen concerning it, is one of the best indications of their true intent, and courts that follow it will rarely go far astray.

■ The numerous documents attached to the complaint and the admissions on file conclusively show that when the Wisner and Dresser Contract was executed on July 9, 1900, both parties understood and construed the contract to mean that Wisner and Dresser had purchased all lands covered by the Swamp Land Grants, including those not theretofore surveyed and identified as swamp lands and not theretofore selected by and approved to the State by the United States. This same construction was given to a similar levee board statute and contract by the Supreme Court of Louisiana in the case of Hartigan v. Weaver, 126 La. 492, 52 So. 674. This decision fully supports the proposition that the grant contained in Act No. 97 of 1890 covered and embraced all swamp lands which had not theretofore been selected by and approved to the State or conveyed to the levee board, and that an agreement by the Board to sell those lands was binding upon the board and vested in the purchaser the right to require the board to cause the lands to be selected by and approved to the State, conveyed by the State to the Board, and by the Board transferred to the purchaser. That interpretation of the contract by the parties themselves immediately after its execution and again by the Board as late as November 28, 1928, when it recognized certain transfers and conveyed to Wisner Estates, Inc., the vendor of one of the plaintiffs herein, certain lands in Terrebonne Parish "not theretofore selected by the State of Louisiana and approved by the United States Government," should be adopted by the court as the true one.

It will not do to say that the Board was in error in so construing the contract. Such an argument was made and rejected in Board of Commissioners for the Fifth Louisiana Levee District v. Concordia Abstract and Realty Co., Limited, et al., 181 La. 373, 159 So. 588. That case is parallel to the case at bar and conclusively determines that the swamp lands in contro-

versy here were conveyed under the Wisner and Dresser Contract.

In the light of the foregoing the Court is of the opinion and holds that the first and primary defense of the Board should be rejected for the reason that plaintiffs have shown by clear and convincing evidence that the lands involved in this suit were included in the Wisner and Dresser Contract.

We will now consider the Board's alternative pleas to the effect that the contract is contrary to public policy and lacks consideration. The Board alleges alternatively that even if it be conceded that the Wisner and Dresser Contract embraces the lands in dispute, to that extent it should be declared null and void for lack of consideration and as being contrary to public policy. In making this contention counsel explain that they have used the word "consideration" in its broadest sense and that it would have been more proper to use the words "error of motive" or "lack of materiality" for the point they wish to make is that the parties did not negotiate with respect to the lands here involved nor did the contract refer thereto for the reason that on the date of the execution of the contract there was no evidence that these lands actually existed.

█ It is deemed a sufficient answer to say that the Board intended to convey and did convey to Wisner and Dresser all of the lands, other than certain tax lands, which it had acquired under the donation from the State including those lands to which the Board "can at this date lay just claim". We know of no prohibitory law which would preclude the Board from selling any or all of these lands, regardless of whether the Board actually knew what lands were then owned or might be claimed. The lands were in existence and they were within the confines of the levee district and the Board had a right to claim them and whether or not the parties knew of their existence is immaterial.

█ The contention that the contract in suit, insofar as concerns the lands in dispute, is contrary to the public policy of the State is likewise without merit. Sec-

tion 11 of Act No. 97 of 1890 expressly declares that, "Said Board of Levee Commissioners shall have the power and authority to sell, mortgage, pledge or otherwise dispose of said lands in such manner and at such times and for such prices as to said board shall seem proper." It follows that the Wisner and Dresser Contract is not contrary to the public policy of the State but is in absolute accordance with it. United States v. Trans-Missouri Freight Association, 166 U.S. 290, 17 S.Ct. 540, 41 L.Ed. 1007.

The last defense to this action pleads the prescriptions of ten and of thirty years. The pleas are urged in the alternative and necessarily presuppose that the action which they seek to bar actually exists but that the right of action under the contract to have those lands conveyed may not now be enforced. But though this is the situation, the argument advanced in support of the pleas is predicated upon the ground that the lands were never covered by the contract, and that plaintiffs seek to reform the contract so as to declare them to be subject thereto. The argument is not persuasive. This action is in no sense an action to reform the contract. What gives vitality to this action is the fact that the contract covers the lands.

█ The obligation assumed by the Board at the time of the execution of the contract was to lend its assistance whenever requested so to do. But since there was no fixed period stipulated in the contract within which the obligations assumed by the Board were to be performed, the right of action which plaintiffs are seeking to enforce in this suit, did not arise until plaintiffs made demand upon the Board. Therefore as prescription began to run only on June 30, 1947, the date when the demand was made, the pleas are, and must be disallowed. State ex rel. Hyams' Heirs v. Grace, Land Office Register, 197 La. 428, 1 So.2d 683.

In the light of the foregoing the court concludes that plaintiffs' motion for a summary judgment should be granted and that the cross-motions for a summary judgment filed by the defendants should be denied.

Judgment in favor of the plaintiffs and against the defendants shall be entered and an order for judgment shall be prepared and submitted forthwith by the prevailing parties.